192 F.3d 656 (7th Cir. 1999)
 BARBARA JOHNSON and LEADERSHIP COUNCIL FOR METROPOLITAN OPEN COMMUNITIES, a not-for-profit Illinois corporation, and on behalf of persons similarly situated, Plaintiffs-Appellees,
v.
MIKE KAKVAND, Defendant-Appellant.
 No. 97-3893
 United States Court of Appeals, Seventh Circuit
 Argued September 10, 1998
Decided September 17, 1999
Rehearing Denied October 15, 1999
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 1650--David H. Coar, Judge.
 Before Coffey, Easterbrook and Kanne, Circuit Judges.
 Coffey, Circuit Judge.
 
 
 1
 Barbara Johnson and the Leadership Council for Metropolitan Open Communities sued Liberty Mortgage Corporation Northwest ("Liberty") and its president and sole shareholder, Mike Kakvand, alleging violations of the Fair Housing Act, 42 U.S.C. sec. 3601 et seq., the Equal Credit Opportunity Act, 15 U.S.C. sec. 1691 et seq., and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS sec. 505/1 et seq. Liberty and Kakvand failed to respond to the complaint, and the district court entered a default judgment against them on liability. At the same time, the district court granted the injunctive relief the plaintiffs sought. It required that Liberty and Kakvand take a variety of steps to eliminate racial discrimination and promote equal opportunity in Liberty's lending practices.
 
 
 2
 During the ensuing discovery on the damages issues, Liberty and Kakvand repeatedly refused to comply with discovery requests and disobeyed court orders requiring them to comply with discovery. The district court ultimately imposed a sanction of $10,000 pursuant to Federal Rule of Civil Procedure 37. On the eve of the scheduled date for the hearing to establish damages, Liberty filed for bankruptcy. The district court severed the claims against Liberty and permitted the plaintiffs to proceed against Kakvand alone. At the close of the hearing, the district court awarded the plaintiffs $18,756.46 in compensatory and punitive damages. The court later granted the plaintiffs' request for attorneys' fees in the amount of $165,883.25.
 
 
 3
 Kakvand appeals only the Rule 37 sanction of $10,000 and the award of attorneys' fees. We affirm.
 
 I. BACKGROUND
 
 4
 Barbara Johnson, an African-American woman who teaches in the Chicago Public School system, bought a home in what the plaintiffs describe as "a predominantly AfricanAmerican neighborhood" in 1991 and financed the purchase with a 30-year mortgage at 9.5% interest. Johnson's payments on the mortgage were timely, and in fact, in an effort to pay down the loan faster she paid an extra amount toward the principal each month. In 1993, she saw an advertisement from Liberty Mortgage for a 15-year mortgage refinance at 7.0% interest. She telephoned Liberty, spoke with Liberty agent Anthony Jeter, and set up an appointment to initiate the loan application process. When Johnson arrived at the office, Jeter talked briefly with her, photocopied her driver's license and credit card, and told her that everything looked great and that she could begin filling out papers once she paid a $300 application fee. Johnson complied and paid the fee. She was surprised to find that the papers specified an interest rate of 7.5% instead of the advertised 7.0%, but she was told that the rates had gone up. Because even the 7.5% was better than her current interest rate, she decided to proceed with the mortgage application and signed the necessary documents. At that point, Jeter asked her additional questions about the property, and expressed concern over a second- floor kitchen that had been installed before Johnson bought the house. Without elaborating, Jeter said the kitchen violated zoning ordinances, but gave no indication that the kitchen would affect Johnson's loan application.
 
 
 5
 About two weeks later, Johnson received a form stating that her mortgage application had been denied because of "Unacceptable Property." Johnson, who had an excellent credit rating, was surprised by the rejection. When Johnson asked Jeter why her application was rejected, he said it was because of the second-floor kitchen. Three months later, Johnson applied for a mortgage refinance with another company, Fleet Mortgage. She obtained a 15-year mortgage at 7.5% interest without difficulty. Because the amount financed was slightly different, however, the actual percentage rate was somewhat higher than it would have been under the Liberty terms. A financial expert later testified that the Fleet mortgage cost Johnson $3,456.46 more over the term of the mortgage than the Liberty mortgage would have.
 
 
 6
 After she obtained the mortgage from Fleet, Johnson contacted the Leadership Council for Metropolitan Open Communities, a not-for-profit organization that combats discrimination in housing and related lending practices. After the Leadership Council conducted an investigation, the Council and Johnson filed suit against Liberty and Kakvand on March 15, 1995, alleging violations of federal fair housing and lending laws, and the Illinois consumer fraud law.[1] Liberty and Kakvand never responded to the complaint, and the clerk of court entered a default against them on June 20, 1995. They made no move to vacate the default. The plaintiffs then served the defendants with discovery requests due in September 1995 seeking information, documents and reasoning related to the denial of Johnson's loan application. Liberty and Kakvand failed to respond until five months later, when they produced a response that the court termed "woefully inadequate." In particular, the defendants claimed that they were unable to produce Johnson's loan file, which contained a number of documents necessary to the plaintiffs' case. On March 21, 1996, the district court granted the plaintiffs' motion to compel and ordered the defendants to produce Johnson's loan file and to respond fully to all discovery requests by April 5, 1996. After the defendants failed to comply with this order, the plaintiffs moved for sanctions. The court postponed the hearing on the motion for sanctions four times after Kakvand appeared without an attorney on the first three scheduled dates and appeared with an attorney not admitted to the federal bar of the Northern District of Illinois on the fourth scheduled date, May 30, 1996. Finally, on May 31, when Kakvand once again failed to secure proper counsel, the district court admitted the defendants' non-admitted attorney to avoid further delay. At the hearing the plaintiffs established that the defendants had Johnson's loan file in their possession at the time the complaint was filed. The district court admonished Kakvand for his "total disregard" of court process. The court deferred ruling on the motion for sanctions, directed the parties to "get to the bottom" of the loan file's disappearance and ordered Kakvand to cooperate with all future discovery.
 
 
 7
 In the meantime, the plaintiffs moved for a default judgment, and on June 10, 1996, the district court granted the motion and entered a default judgment against Liberty and Kakvand. The district court found that the defendants discriminated against Johnson and awarded the plaintiffs actual and punitive damages to be determined at a later hearing. The district court also awarded reasonable attorneys' fees and other court costs. Additionally, the court granted the equitable relief that the plaintiffs had requested, requiring the defendants to:
 
 
 8
 adopt a uniform loan application and develop, institute and apply a uniform procedure for handling loan inquiries which shall include uniform criteria relating to the income, credit, credit history, family size and any other relevant criteria for loan applicants;
 
 
 9
 conduct or participate in regularly held educational programs designed, approved and/or instituted by the Leadership Council to inform all of their sales and loan application personnel, supervisors, managers, agents and employees of their duties under the Equal Credit Opportunity Act and the Fair Housing Act;
 
 
 10
 [m]aintain for biannual inspection by the Leadership Council for five (5) years a record of each loan application submitted during the period, including (a) date the loan application was submitted and the date it was approved, denied or otherwise disposed of, (b) copies of all paperwork generated by the action taken by each of the defendants or their agents or employees on each such application, including but not limited to, the credit report received on the applicant, property appraisal, and any notes of the Defendants, their employees or agents concerning the acceptability for a loan of every such applicant, and (c) a separately maintained list of the race of each loan applicant;
 
 
 11
 [i]nclude in all loan applications, a clause stating as follows: "The Civil Rights Laws of the United States prohibiting lending discrimination on basis [sic] of race, color, religion, sex, handicap, age, familial or marital status, national origin, or sexual orientation shall be compiled [sic] with in processing this application, and all parties shall deal in a free and open manner according to said laws;"
 
 
 12
 include in all advertisements other than a classified the logo "Equal Opportunity Lender," and place a total of at least 20% of any such advertisements in media in areas where minority residents constitute a substantial portion of the population, a listing of such recommended media to be supplied by the Leadership Council;
 
 
 13
 maintain for inspection by the Leadership Council copies of all sales advertisements placed by each of the Defendants or their employees or agents, including transcripts of any and all radio and television advertisements;
 
 
 14
 actively recruit and hire minority employees on the same basis as white persons, and assign duties and location of work to such employees and agents without regard to race, color or national origin, and immediately notify the Leadership Council in writing of any employment vacancies and new positions;
 
 
 15
 post in each office in which the Defendants conduct business a notice containing an explanation of fair lending and fair housing rights and maintain such notice for a period of five (5) years;
 
 
 16
 provide to every applicant with whom the Defendants or their agents or employees have contact with [sic] within three (3) years, a copy of said notice;
 
 
 17
 maintain a written log of telephone, in-person and all other inquiries and responses to the inquiries, detailing the name, date and time of such inquiry, and summarize each such inquiry and response;
 
 
 18
 pay the salary of and cooperate with an on-site consent decree monitor;
 
 
 19
 pay the cost of a comprehensive five (5) years testing program to be implemented and conducted by the Leadership Council; [and]
 
 
 20
 pay the cost of implementation of all equitable relief.
 
 
 21
 Judgment Order of June 14, 1996 at 3-6. Although the defendants moved to vacate the default judgment, the motion was not presented timely to the district court under the local rules and so it was stricken.
 
 
 22
 The defendants continued to resist and frustrate discovery at every turn. The defendants objected to almost all of the interrogatories and production requests served by the plaintiffs on June 7, 1996, and responded "investigation continues" to the remainder, including a request for the address of Liberty's vice president. Kakvand, who signed the discovery responses, claimed not to be able to locate the W-2 forms for any of Liberty's former employees with whom the plaintiffs sought to speak, and also claimed not to know Jeter's present whereabouts or the identity of any other employees who had processed Johnson's loan application. Kakvand continued his pattern of obstruction and canceled deposition dates at the last minute on three occasions and was furthermore evasive in answering questions when he finally appeared on August 9, 1996. After Kakvand failed to produce documents that he promised at his deposition to provide, the plaintiffs filed another motion to compel on October 3, 1996. The court held a further hearing on the plaintiffs' motion for sanctions on November 13, and concluded that Kakvand had made "a willful, calculated effort to intentionally circumvent the discovery process." The court thereafter barred the defendants from opposing any claims asserted by the plaintiffs and awarded the plaintiffs attorneys' fees of $10,000 for the additional time expended pursuing discovery in the face of the defendants' obstructive efforts, pursuant to Federal Rule of Civil Procedure 37(b)(2)(B) and (c)(1).
 
 
 23
 The hearing on damages commenced as scheduled on February 10, 1997, and at that time the attorney for Liberty and Kakvand advised the court that Liberty had filed for bankruptcy on February 7. The trial court severed the claims against Liberty, and proceeded with the case against Kakvand. At the close of the hearing, the district court awarded Johnson $10,000 in punitive damages and $8,756.46 in compensatory damages. The compensatory damages included the $300 application fee, the $3,456.46 difference in the cost of the mortgage Johnson eventually obtained, and $5,000 for emotional distress. The plaintiffs then petitioned for attorneys' fees in the amount of $146,476.25 for Seyfarth, Shaw, Fairweather & Geraldson and $19,357 for the Council. On October 3, 1997, the district court granted the plaintiffs' petition, and Kakvand appealed.
 
 II. ISSUES
 
 24
 On appeal, Kakvand contends that imposing the $10,000 Rule 37 sanction on him individually was error, because the district court improperly "pierced the corporate veil" to punish him for Liberty's actions. Kakvand also challenges the award of attorneys' fees, arguing that the award was an improper attempt to punish him further for discovery disputes, and that the award was not proportional to the damages the plaintiffs obtained. District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the attorneys' fees requested. See Salgado v. General Motors Corp., 150 F.3d 735, 739 & n.5 (7th Cir. 1998) (Rule 37 sanctions); Alexander v. Gerhardt Enter., Inc., 40 F.3d 187, 193-94 (7th Cir. 1994) (attorneys' fees). Thus, we review these rulings only for abuse of discretion. Id. "A decision constitutes an abuse of discretion when it is not just clearly incorrect, but downright unreasonable." Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 131 F.3d 625, 628 (7th Cir. 1997) (internal quotation marks and citation omitted). Under this standard of review we will uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently ourselves. See Williams v. Chicago Bd. of Educ., 155 F.3d 853, 857 (7th Cir. 1998).
 
 III. ANALYSIS
 A. Rule 37 Sanction
 
 25
 Kakvand contends that the district court abused its discretion in sanctioning him individually, because the court "pierced the corporate veil" and held him accountable for Liberty's misconduct in obstructing discovery, including the loss of Johnson's loan file. We disagree. First, Kakvand never objected before the district court to the sanction imposed on him personally, nor did he raise any argument there about "piercing the corporate veil." It is well established that issues not presented to the trial court cannot be raised on appeal. See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse--Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993). Thus, Kakvand has waived his right to appeal this issue.
 
 
 26
 Even if Kakvand had not waived the issue, however, it is without merit. Kakvand himself repeatedly obstructed legitimate discovery efforts. We are of the opinion that the district court was warranted in imposing sanctions against him personally. The district court did not need to "pierce the corporate veil" to hold Kakvand liable for the defendants' misconduct in discovery. Kakvand's own participation in that misconduct provides a solid basis for individual sanctions. The district court did not abuse its discretion in sanctioning Kakvand individually.
 
 B. Attorneys' Fees
 
 27
 Kakvand initially objects to the award of attorneys' fees and argues that the district court awarded the fees to punish him. It is true that an award of attorneys' fees may not be used as a sanction for misconduct. See Simpson v. Sheahan, 104 F.3d 998, 1003 (7th Cir. 1997) (the court's disapproval of the defendant's behavior is not relevant to determining a reasonable fee). But that is not what the district court did here. Rather, the district court noted Kakvand's objections to the fees, examined the hours billed and the rates charged, and concluded that the fees were reasonable. The court thus satisfied its obligations under Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).
 
 
 28
 Kakvand makes much of the fact that the trial court, in its order awarding fees, noted that "[f]rom the outset defendants Kakvand and Liberty Mortgage acted willfully and in bad faith to delay and obstruct these proceedings," and later responded to Kakvand's protest that the fees were too large by stating that "Kakvand's conduct caused what should have been a simple straight- forward case to become an endurance test." In our opinion the court's comments fail to establish a desire to punish Kakvand, but can best be described as accurately recounting Kakvand's conduct throughout. Moreover, it is a known fact that a party's uncooperativeness with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case, an increase that will then be reflected in the petition for attorneys' fees. We are not convinced that the district court's comments in fact suggest any inappropriate motivation to punish Kakvand through the award of attorneys' fees.
 
 
 29
 Kakvand also contends that the amount of attorneys' fees should have been reduced to account for the disparity between the relief that the plaintiffs sought and the relief they ultimately recovered. The plaintiffs sought $27,574 in compensatory damages. They recovered the smaller sum of $8,756.46, due mainly to the district court awarding $5,000 for emotional distress rather than the requested $20,000. They also sought $300,000 in punitive damages, contending that Kakvand's level of profits from Liberty justified a large award. The district court implicitly rejected this contention, but did award punitive damages of $10,000. Finally, as before, the plaintiffs sought a variety of injunctive measures designed to reduce Liberty's discriminatory lending practices, and they obtained all of this requested relief.
 
 
 30
 The degree of success a plaintiff obtains is one of the most important factors to be considered in determining whether the attorneys' fees requested by the plaintiff are reasonable. See Farrar v. Hobby, 506 U.S. 103, 114 (1992); City of Riverside v. Rivera, 477 U.S. 561, 574 (1986). Indeed, where damages are the primary goal of a lawsuit, a comparison between the damages sought and those awarded is highly relevant to the reasonableness of the fee petition. See Rivera, 477 U.S. at 585 (Powell, J., concurring); see also Perlman v. Zell, 185 F.3d 850, 858-59 (7th Cir. Aug. 2, 1999); Cole v. Wodziak, 169 F.3d 486, 488-89 (7th Cir. 1999). Here, equitable relief was a major goal of the lawsuit. Moreover, the plaintiffs prevailed on every claim, achieving most of the compensatory relief and all of the equitable relief they sought. They also obtained punitive damages, although not in the amount they requested. We refuse to hold that the district court abused its discretionin granting the attorneys' fees that the plaintiffs requested.
 
 IV. CONCLUSION
 
 31
 It bears noting that the attorneys' fees in this case are very high, but when taking into consideration the enormous amount of time spent as a result of Kakvand's obstructive conduct, in addition to the waste of precious and valuable court time, we do not think the district court abused its discretion in awarding the fees as it did. The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The suit also named two other Liberty employees, Kennetthe Wiedemann and Heather McKay. These defendants were dismissed from the case on October 2, 1997.