**DISTRICT RE/MAX NORTH CENTRAL, INC, Plaintiff–Appellee, Cross–Appellant,**

v.

**Patricia COOK, f/d/b/a Re/Max Lake and Country, Defendant–Appellant, Cross–Appellee.**

Nos. 02–1647, 02–1750.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 3, 2003.

Decided April 24, 2003.

---

Before WOOD, Jr., COFFEY, and WILLIAMS, Circuit Judges.

## ORDER

This successive appeal arises from a summary judgment in favor of Re/Max North Central, Inc. ("Re/Max"). When this case was last before this Court, we reviewed the district court's decision to grant Re/Max a preliminary injunction against Patricia Cook's continued use of Re/Max's marks and logos. In affirming the court's decision, we concluded that Re/Max demonstrated that (1) it would likely succeed on the merits, (2) it would suffer irreparable injury if the injunction was not granted, and (3) the trial judge had carefully and properly weighed the harm each party would likely suffer and, nonetheless, found that Cook failed to establish that she would suffer irreparable harm. *Re/Max North Central, Inc. v. Cook*, 272 F.3d 424, 433 (7th Cir.2001). On this return trip Cook asks this Court to review whether the district court's granting of Re/Max's motion for summary judgment was proper. We hold that it was.

## I. BACKGROUND

In 1993, Cook and Re/Max entered into a franchise agreement that gave Cook the right to operate a Re/Max real estate office for a renewable five year term and required, as a condition for renewal, that Cook hire five sales associates by mid–1996. On May 1, 1998, Re/Max mailed Cook a notice of termination citing her failure to meet the sales associate hiring quota as the reason for termination.[1] The notice of termination extended Cook's franchise for six months under Article 6.D of the 1993 agreement.[2] After sending a second notice in October 1998, verifying that Cook's franchise would be terminated as of the first of November in the following month, Re/Max concluded that a termination would violate the Wisconsin Fair Dealership Law ("WFDL") because Cook had not been provided with 60 days to cure her franchise's default. Re/Max then decided to rescind the two prior notices and, in a letter dated November 25, again extended the term of Cook's franchise on a month to month basis. That letter further served as notice to Cook that her franchise would be terminated if she failed to cure her associate hiring default within 60 days, as required by Wis. Stat. § 135.04.

In a February 17, 1999, letter to Cook, Re/Max acknowledged that Cook had cured her default by hiring the requisite number of sales associates[3] and informed

---

1. Not only had Cook failed to meet the quota, she was the only sales associate in the office.

2. Article 6.D of the 1993 contract dictated the terms under which Cook's franchise operated as of May 1, 1998:

    If Franchisee continues to operate the Franchise after the end of the initial period . . . without proper renewal and with the written consent of Subfranchisor, Franchi-see shall be deemed to be operating on a month to month basis under the terms and conditions of the agreements then used by Subfranchisor for granting of new franchises within the state. . . .

3. To cure her default, Cook hired several family members as sales associates.

Cook that, "Renewal materials, including RE/MAX North Central's current form of franchise agreement, [would] be forwarded to [her] shortly." On April 22, Re/Max mailed Cook a copy of its 1999 franchise agreement on file with the State of Wisconsin, but Cook refused to sign the document primarily because it required her to maintain five sales associates throughout the five year term of the agreement even though Cook wished to retain only two sales associates. After extensive negotiations between Cook and Re/Max concerning the sales associate quota, the parties agreed that the quota would remain at five. However, when Re/Max provided Cook with another 1999 agreement to sign, she unilaterally without discussion reduced the number of sales associates required by the agreement to two associates in the first two years and three associates in the final three years. Re/Max declined to accept Cook's proposed changes and in January of 2000, Re/Max once again initiated procedures to terminate Cook's franchise. Cook's franchise was ultimately terminated the following August.

In October of 2000, Re/Max filed suit against Cook under the Lanham Act [4] alleging trademark · infringement because Cook continued to use Re/Max's marks and logos subsequent to her franchise's termination. Cook filed a counterclaim alleging that Re/Max had unlawfully terminated her franchise rights. The district court granted Re/Max's motion for a preliminary injunction, affirmed by this Court, *Re/Max,* 272 F.3d at 426, and later granted Re/Max's motion for summary judgment. Cook, taking a third shot at the apple, returns to this Court asking for relief from the summary judgment order. Re/Max cross-appeals the district court's

damage award of $10,304.81. Specifically, Re/Max argues that the court abused its discretion by denying Re/Max treble damages and attorneys' fees.

## II. DISCUSSION

■ This Court reviews the district court's grant of Re/Max's motion for summary judgment *de novo.* *Albiero v. City of Kankakee,* 246 F.3d 927, 931 (7th Cir. 2001). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Id.* Before the district court, Cook argued that Re/Max's motion for summary judgment should have been denied because Re/Max had committed two violations of the WFDL. Cook first claimed that Re/Max's year 2000 franchise agreement, which was tendered to Cook for her signature in March of 2000, changed the competitive circumstances of Cook's dealership. Cook also alleged that Re/Max had not provided Cook with 60 days to cure her default after giving her notice in January of 2000 that she was in default for failing to renew her franchise contract. The district court rejected both arguments and Cook has abandoned them in her current appeal. Instead, Cook claims that Re/Max was obligated to provide her with an opportunity to renew her franchise under the 1998 agreement because the 1998 agreement was the form of Re/Max's franchise contract on February 17, 1999–the date Re/Max acknowledged that Cook had cured her default by hiring five sales associates. By failing to offer her the 1998 agreement, Cook contends that Re/Max violated the WFDL, specifically Wis. Stat. § 135.03,[5] and breached the 1993 franchise contract.

---

**4.** 15 U.S.C. § 1051, *et seq.*

**5.** Wis. Stat. § 135.03 is entitled "Cancellation and alteration of dealerships," and provides,

"No grantor, directly or through any officer, agent or employee, may terminate, cancel, fail to renew or substantially change the competi-

We do not reach the merits of Cook's appeal, however, because Cook failed to argue that she was entitled to the 1998 agreement while opposing summary judgment in the district court. In fact, in her sixteen page response to Re/Max's motion for summary judgment, Cook not even once mentions the 1998 agreement, let alone that Re/Max's failure to tender the 1998 agreement somehow precluded summary judgment. "It is well-established that a party waives the right to argue an issue on appeal if he fails to raise that issue before the trial court." *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002); *accord Johnson v. Kakvand,* 192 F.3d 656, 661 (7th Cir.1999); *see also Laborers' Intern. Union of North America v. Caruso,* 197 F.3d 1195, 1197 (7th Cir.1999) (" 'We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions.' ") (quoting *Arendt v. Vetta Sports, Inc.,* 99 F.3d 231, 237 (7th Cir. 1996)). Cook's waiver is further evidenced by the fact that the 1998 agreement is not found in the record, even though the record includes the 1993 and the 1999 agreements.

Moving on to Re/Max's cross-appeal of the damage award, this Court reviews the adequacy of monetary relief awarded under the Lanham Act and a denial of attorneys' fees for an abuse of discretion. *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1092, 1099 (7th Cir.1994). Re/Max argues that the district court should have found that Cook's infringement on Re/Max's marks was willful and deliberate, thus justifying an award of treble damages and attorneys' fees. Re/Max's argument ignores that, "The discretion given by the Lanham Act[6] to increase an award of lost profits if the circumstances warrant is to be exercised by the trial court and not by the court of appeals." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 745 (7th Cir.1985); *see also BASF Corp.,* 41 F.3d at 1096 ("Enhancement of an award of damages is clearly committed to the district court."). If the circumstances warrant, it is solely within the district court's discretion to enhance damages under the Lanham Act. Thus, we cannot say that the district court abused its discretion when refusing to do so. Re/Max's argument that it is entitled to attorneys' fees under Article 17 of the 1993 agreement[7] is unsupported by citation to relevant authority[8] and, therefor, waived for lack of devel-

tive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor."

6. The Lanham Act states, "In assessing damages the court *may* enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.... The court in exceptional cases *may* award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

7. Article 17 of the 1993 agreement states, "If Franchisee defaults in the performance of its obligations under this agreement, Franchisee shall pay to Subfranchisor, upon demand by Subfranchisor, the costs and expenses, including reasonable attorney's fees, incurred by Subfranchisor, as a result of enforcing the provisions of this agreement."

8. Re/Max cites only the Fifth Circuit case of *McDonald's Corp. v. Watson,* 69 F.3d 36 (5th Cir.1995), in support of its argument that it is contractually entitled to attorneys' fees. *Watson,* however, does not strengthen Re/Max's position because it holds that, "The district court abuses its discretion if it awards contractually-authorized attorneys' fees under circumstances that make the award inequitable or unreasonable or fails to award such fees in a situation where inequity will not result." *Id.* at 45–46. The district court concluded that because Cook validly contested the abrogation of the franchise and it was undisputed that her loss of the right to use Re/Max's trademark would cost Cook roughly

opment. *United States v. Hook*, 195 F.3d 299, 309–10 (7th Cir.1999) (stating that issues "present[ed] on appeal lack[ing] any degree of development in [the] briefs ... merit only our briefest attention. A party's failure to address or develop a claim in its opening brief constitutes a waiver of that claim, for '[i]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'" (quoting *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir.1998))).

AFFIRMED

70% of her client base, the equities weighed

against a contractual award attorneys' fees.