In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3538 & 10-3539

E360 INSIGHT, INC., *et al.*,

*Plaintiffs-Appellees/*
*Cross-Appellants*,

*v.*

THE SPAMHAUS PROJECT,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-cv-03958—**Charles P. Kocoras**, *Judge.*

ARGUED JUNE 8, 2011—DECIDED SEPTEMBER 2, 2011

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The last time plaintiff e360 Insight, Inc. came before this court, we affirmed the district court's entry of default judgment against defendant The Spamhaus Project. All that remained was for e360 to make a reasonable showing of its damages.

After a bench trial on the issue, the district court awarded e360 a mere $27,002, a far cry from the millions of dollars that e360 sought. Both parties have appealed. We conclude that the district court properly struck most of e360's damages evidence, either as an appropriate discovery sanction or for proper procedural reasons, and we reject e360's challenges to the judgment. We also agree with Spamhaus that the evidence failed to support the modest award of $27,000 in actual damages because e360 based its damage calculations on lost revenues rather than lost profits. We vacate and remand with instructions to enter judgment for e360 in the nominal amount of three dollars.

## I. *Factual and Procedural Background*

Defendant Spamhaus is a non-profit company organized under the laws of the United Kingdom and dedicated to identifying and blocking "spam," or unwanted bulk email. *e360 Insight, Inc. v. The Spamhaus Project*, 500 F.3d 594, 595 (7th Cir. 2007). Spamhaus maintains a list of internet protocol (IP) addresses of verified spam distributors, which internet service providers (ISPs) use to prevent emails originating from those addresses from reaching their intended recipients.

Plaintiff e360 is a now-defunct internet marketing company that was operated out of Wheeling, Illinois by co-plaintiff David Linhardt. (For simplicity's sake, we refer to e360 and Linhardt collectively as "e360.") e360 uses email to market products on behalf of other businesses, who pay e360 for this service. Spamhaus added e360 to

its list of known spammers, and e360 sued Spamhaus in an Illinois state court for tortious interference with contractual relations, tortious interference with prospective economic advantage, and defamation. Spamhaus removed the action to federal court on the basis of diversity of citizenship. Spamhaus asserted a lack of personal jurisdiction, but for reasons that remain unclear, later withdrew its answer and informed the district court that it would no longer defend against e360's suit. The district court granted a default judgment against Spamhaus and, relying on Linhardt's affidavit, awarded e360 $11,715,000 in damages.

Spamhaus then reversed course and decided that it did in fact want to defend itself. It moved to set aside the default under Federal Rule of Civil Procedure 60(b)(4), challenging the damages award and again asserting a lack of personal jurisdiction.[1] The district court denied that motion. On appeal, we affirmed the default judgment but concluded that Linhardt's "conclusory statement of the lost value of his business . . . alone cannot provide the requisite 'reasonable certainty' for a damages award without the necessity of a hearing." 500

---

[1] Spamhaus argued that its ability to assert a lack of personal jurisdiction in a Rule 60(b) motion had nothing to do with whether its attorney appeared or not. See *e360 Insight*, 500 F.3d at 597. As we recently explained, the exact opposite is true — this is a "pivotal question" when a defendant asserts a lack of personal jurisdiction in a Rule 60(b) motion. *Philos Technologies, Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011).

F.3d at 603. We vacated the damages award and remanded this matter for "a more extensive inquiry into the damages to which e360 is entitled." *Id*.

Following a bench trial on remand, the court awarded a total of $27,002 on e360's three claims — $27,000 for the claim of tortious interference with contractual relations, and nominal damages of one dollar each for its claims of defamation and tortious interference with prospective economic advantage. *e360 Insight, LLC v. The Spamhaus Project*, 2010 WL 2403054 (N.D. Ill. June 11, 2010). Spamhaus appealed that award, and e360 has cross-appealed.

II.  *Analysis*

Both sides challenge the district court's determination of damages — e360 says that the district court's damages award was too low, and Spamhaus says the award was too high. e360 also argues that the district court committed reversible errors by: (1) imposing discovery sanctions limiting e360's damages and striking the bulk of its witnesses; (2) denying e360's pre-trial motion to compel Spamhaus's interrogatory responses; (3) excluding one of e360's key trial exhibits on procedural grounds; and (4) rejecting Linhardt's damages testimony. Because these latter arguments bear directly on the district court's damages award, we address first those arguments in the cross-appeal before turning to Spamhaus's challenge to the $27,000 award.

A. *Discovery Sanctions*

e360's first complaint concerns the district court's discovery sanctions striking a number of e360's witnesses and limiting its damages. Spamhaus moved for sanctions against e360 for "persistent discovery defaults." Linhardt had repeatedly failed to appear for his deposition, and e360 had given unresponsive answers to interrogatories. On July 30, 2008, the district court granted Spamhaus's motion in part and ordered e360 to pay monetary sanctions, to complete Linhardt's deposition by September 30, 2008, and to answer all outstanding interrogatories by August 13, 2008. The court also ordered: "No new discovery may be propounded by either party."[2]

The court-ordered deadline for answering the interrogatories passed without response by e360. On August 28, 2008, Spamhaus moved for dismissal as a sanction for e360's failure to comply with the July order. In support, Spamhaus noted e360's previous failures to comply with its discovery obligations over the course of the litigation, failures that had already resulted in the entry of two separate orders compelling discovery from e360. In response, e360 blamed its lawyers. It claimed that the interrogatory responses were the responsibility of a lawyer who had left its attorneys' firm shortly after the July order was entered. Because e360's other at-

---

[2] The district court's July 30, 2008, order plays a central role in our resolution of the issues in this appeal and is hereafter referred to as the "July order." The court later ordered that the limited remaining discovery allowed by its July order be completed by December 2, 2008.

torneys were in trial until after those responses were due, e360 said, they first learned of this problem when they received Spamhaus's motion to dismiss, after which they immediately served new interrogatory responses.

At a hearing on the motion to dismiss, Spamhaus informed the district court that many of e360's new responses were still defective because they simply referred to documents in which substantive answers might be found, in violation of the district court's previous instructions to the contrary.[3] Rather than dismiss the case immediately, the district court gave e360 another opportunity to supplement its prior response to Spamhaus's motion to dismiss and to explain why dismissal was not appropriate. With that supplemental response, e360 submitted amended interrogatory responses. e360 also claimed that it was the only party prejudiced by the complained-of delay (the theory was that any delay by e360 only "kept [it] from proving up [its own] damages"), noted that the dispute "has only been going on for at most eight months," and, in a remarkable display of chutzpah, complained that Spamhaus had failed to warn e360 before filing its motion to dismiss.

In reply, Spamhaus pointed out that e360's amended interrogatory responses identified sixteen new witnesses on e360's costs, revenues, profits, lost profits, and valua-

---

[3] The district court had previously instructed e360 that it could no longer provide such answers under Fed. R. Civ. P. 33(d), which e360 had "overused" in an apparent attempt to avoid providing meaningful responses to Spamhaus's interrogatories.

tion. e360 had previously said that only Linhardt would provide such testimony because he was the only person with knowledge of these matters. Spamhaus also pointed out that e360's amended responses increased its damage estimate from the $11.7 million initially requested to a whopping $135 million. To address these eleventh-hour disclosures, Spamhaus said, it would be necessary to "reopen[ ] all discovery in this case," despite the fact that discovery had been closed by the court's July order.

The district court denied Spamhaus's motion to dismiss but imposed other serious sanctions instead. In particular, the district court struck: (a) all sixteen witnesses disclosed for the first time in e360's amended interrogatory responses; and (b) any damage amounts stated in those responses in excess of the earlier $11.7 million estimate.

Federal Rule of Civil Procedure 37(b)(2)(A) grants the district courts the power to impose appropriate sanctions for violations of discovery orders. We review those sanctions for an abuse of discretion, recognizing that the district courts have "wide latitude in fashioning appropriate sanctions." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999). Under this standard, we will affirm any sanctions that were reasonable under the circumstances, even if we might have resolved the matter differently in the first instance. *Id.*, citing *Williams v. Chicago Board of Education*, 155 F.3d 853, 857 (7th Cir. 1998).

On appeal, e360 argues that the sanctions were inappropriate because its failure to comply with the district court's July order was the result of inadvertence rather than willfulness, bad faith, or fault. This argument is

wholly misplaced. For starters, a showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (noting that bad faith, willfulness, or fault is required only "when dismissals are used specifically as a discovery sanction"); see *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958) (noting that "serious constitutional questions" compel conclusion that dismissal may not be imposed as a discovery sanction absent a showing of willfulness, bad faith, or fault); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (per curiam); see also *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir. 1992) ("If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal (if the failure is by the plaintiff) or default (if by the defendant) would be an excessively severe sanction.").

e360's failure to comply with the district court's July order was a sufficient basis to impose sanctions under Rule 37(b)(2)(A); see also *Societe Internationale*, 357 U.S. at 208 ("Whatever its reasons, petitioner did not comply with the production order. Such reasons . . . can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply."). e360's culpability for that failure "determines only which sanctions the court should impose and not whether any sanctions are appropriate at all." *Tamari v. Bache & Co. (Lebanon)*

*S.A.L.*, 729 F.2d 469, 473 (7th Cir. 1984), citing *Societe Internationale,* 357 U.S. at 208. e360's failure to comply with the district court's order was the result of at least negligence, which is a degree of fault sufficient for imposing sanctions. *Tamari*, 729 F.2d at 474.

e360 compounds this error by keeping a narrow focus on only its failure to comply with the district court's July order. To justify its failure, e360 repeats the arguments it presented to the district court: blaming its former attorneys and Spamhaus. While there is no substance to those arguments on their own merits, the more fundamental problem is that we review a sanction not in isolation but in light of "the entire procedural history of the case." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); see *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998) (explaining that a sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction"). In other words, we weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit. See *Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280, 284 (7th Cir. 1988) (affirming sanction of dismissal, noting that the record was "replete with delays, non-responses to court orders, and missed deadlines"). Thus, it is of little consequence whether, as e360 argues is the case here, the conduct that finally drew the district court's ire can be explained away as a simple negligent mistake. A district court may conclude that one more supposed miscommunication is just another example of a party's demonstrated inability to take his

discovery obligations seriously. See *Newman*, 962 F.2d at 591 ("as soon as a pattern of noncompliance with the court's discovery orders emerges, the judge is entitled to act with swift decision").

In this case, the district court acted reasonably — and with more restraint than necessary — by imposing severe sanctions short of dismissal. By the time Spamhaus filed its motion to dismiss, Linhardt had repeatedly failed to appear for his scheduled deposition, the district court had twice found it necessary to order e360 to comply with its discovery obligations, and e360 had failed to comply with the court's clear order compelling discovery.

Even more troubling are e360's supplemental interrogatory responses. When e360 submitted those responses, it implied that its amendments were meant only to rectify defects in its previous responses. In actuality, however, e360 had drastically amended its previous responses. It added sixteen new witnesses, and it increased its damages estimate by a full order of magnitude. Even setting aside e360's previous discovery delays, these changes provided powerful evidence that e360 was not engaging in the discovery process in good faith.

There is no way that e360 could have believed in good faith that its last-minute disclosure of so many new witnesses and a radically inflated damages estimate was even remotely appropriate, especially as part of its belated effort to comply with a court order compelling discovery. We cannot believe that e360 first learned of all this information in the two weeks between its initial,

late, and inadequate responses to Spamhaus's interrogatories on August 29, 2008, and its amended responses on September 12, 2008. All indications are that this late disclosure was meant to prolong discovery and inflict additional costs on Spamhaus by forcing it to request additional time to depose those witnesses and learn the details of the inflated new damage estimate. e360 only reinforces this suspicion by arguing to us that its failure to comply with the district court's July order "could have been remedied by allowing Spamhaus to conduct any [additional] discovery it felt necessary."

With this track record, no reasonable person could conclude that the district court's sanctions were too severe. See *Johnson*, 192 F.3d at 661; see also *Johnson v. J.B. Hunt Transport, Inc.*, 280 F.3d 1125, 1132 (7th Cir. 2002) (affirming imposition of harsh sanctions in similar circumstances). The stricken witnesses and new damage calculation were disclosed to Spamhaus inexcusably late, and they were provided under circumstances that seriously call e360's good faith into doubt. The district court could have simply dismissed the case as a sanction for the failure to comply with orders and its bad faith misuse of the discovery process. See *Maynard*, 332 F.3d at 467. Instead, the court generously allowed e360 a chance to prove its damages using the information it had disclosed in a timely manner. In so doing, the district court imposed a punishment that was not excessive, see *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993) (requiring that sanctions "be proportionate to the circumstances surrounding the failure[s] to

comply with discovery"), and at the same time avoided the serious prejudice that Spamhaus would have suffered if it had been forced to conduct additional discovery to address e360's late disclosure of so much new information. The district court exercised its discretion with considerable restraint. We affirm the sanction in its entirety.

B.  *e360's Motion to Compel*

Having said that, it is more than a little ironic that e360's next argument concerns the district court's refusal to compel Spamhaus to respond to some of e360's own discovery requests. In October 2008, after sanctions were imposed on e360, e360 moved to compel Spamhaus to answer a number of pending interrogatories. e360 had requested that Spamhaus: (1) identify the individuals involved in the Spamhaus decision to list e360's IP addresses on its list of known spammers; (2) identify all Spamhaus employees and volunteers and provide their job functions, salary, and other compensation; and (3) identify where "data and other assets are stored." The district court denied this motion because its July order had informed the parties that "the only discovery left would be the depositions of [Linhardt] and [e360's] 30(b)(6) representative."

We review the district court's denial of e360's motion to compel for an abuse of discretion. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). Generally speaking, a district court's decision will be considered unreasonable if it was lacking a basis in law or fact,

such that it "clearly appears arbitrary." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008), citing *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007). Even if the district court's decision was unreasonable, however, we will not grant any relief "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice." *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995). Here, e360 argues that these standards were met because the July order said only that, aside from the depositions of Linhardt and e360's corporate representative, "No new discovery may be propounded by either party." The denied motion to compel was not "new" discovery, e360 says, but merely a "request to compel previously propounded [discovery] requests."

Even if we treated the July order as ambiguous, e360 was playing with fire by waiting three months to file its motion to compel. And even if we were to assume that the district court misinterpreted its own order and erred by treating e360's motion to compel as "new discovery" forbidden by its July order, which we doubt, we see no basis for finding that e360 suffered "actual and substantial prejudice" from the denial of that motion. See *Searls*, 64 F.3d at 1068.

First, Spamhaus employees' salaries and compensation were clearly irrelevant to the amount of e360's damages. The mere location of Spamhaus's "data and other assets" would say nothing about any losses e360 suffered. The district court's July order certainly would have prevented e360 from conducting any follow-up discovery based on the answers.

The remaining information e360 sought — the identities of Spamhaus employees and the individuals who were involved in placing e360's IP addresses on the list of spammers — primarily concerned Spamhaus's liability, which had already been established by the default judgment. e360 claims that it was prejudiced because these employees might have known who used Spamhaus's list of known spammers or how many of e360's emails were blocked as a result. We see little reason to think that Spamhaus employees would have such knowledge, however. Spamhaus itself did not actually block any email. It merely provided a list of IP addresses that ISPs in turn used to block emails originating from those addresses. As Spamhaus explained in its interrogatory responses, it provided its list of known spammers for free on the Internet, without collecting names or other information about the individuals who viewed that list. It seems most unlikely, then, that any Spamhaus employees would have any meaningful knowledge about who actually used its list or exactly how many of plaintiff's emails were blocked by users of that list. The speculative possibility that some Spamhaus employees might have possessed such information does not rise to the level of "actual and substantial prejudice" required under our case law. *Searls*, 64 F.3d at 1068.[4]

---

[4] e360 also argues that it was prejudiced not just by the denial of its motion to compel responses to these interrogatories, but also by the denial of any opportunity to follow up on that information, such as by deposing any employees named in

(continued...)

C. *Plaintiffs' Exhibit 5(a)*

e360 next challenges the district court's exclusion of Plaintiffs' Exhibit 5(a) from evidence. Well before trial, e360 submitted its Exhibit 5, a spreadsheet prepared by Linhardt detailing the losses e360 claimed to have suffered because Spamhaus placed e360 on its list of known spammers. In Exhibit 5, Linhardt had estimated that e360 had decreased in value by $135,173,577 as a result of the outgoing emails he believed had been blocked because e360 was placed on that list. The week before trial, however, e360 submitted Exhibit 5(a) with a new "supplemental damage analysis" in which Linhardt revised that estimate to $122,271,346.

Spamhaus moved to strike Exhibit 5(a) on the ground that it contained a "wholly new, previously undisclosed damages calculation." e360 claimed that it had discovered a mathematical error in one of the calculations in Exhibit 5. The district court heard arguments shortly before trial, but declined to make a definitive ruling on the motion to strike. Instead, the court allowed e360 to offer the exhibit at trial and deferred its ruling on admissibility until afterward, believing it would "be a little more attuned to the essence of the claimed mistake" after hearing the parties' testimony.

After trial, the district court granted Spamhaus's motion and struck Exhibit 5(a) for both procedural and substantive reasons. *e360 Insight*, 2010 WL 2403054 at *2.

---

[4] (...continued)

Spamhaus's responses. This option was foreclosed by the district court's July order forbidding such "new discovery."

Procedurally, the district court explained, e360 had sub-
mitted Exhibit 5(a) "well after the discovery cutoff
date" set in the court's July order and had offered that
exhibit as support for a damages estimate "exceeding
the limit of damages set . . . as a sanction for [e360's]
multiple breaches of [its] discovery obligations." *Id.*
Substantively, the court concluded that Exhibit 5(a)
was inadmissible under Federal Rule of Evidence 702
because Linhardt, who prepared the exhibit, lacked
"expertise necessary to establish the foundational
basis for admissibility, and no scientific or other reliable
principles or methods were used in the exhibit's prepara-
tion." *Id.*

We review the district court's decision to exclude
Exhibit 5(a) for an abuse of discretion. *Maher v. City of
Chicago*, 547 F.3d 817, 823 (7th Cir. 2008), citing *Griffin v.
Foley*, 542 F.3d 209, 217 (7th Cir. 2008). Here, e360
argues that the district court abused its discretion
because Exhibit 5(a) did not contain "new evidence"
forbidden by the July order. Rather, e360 says, the new
exhibit merely contained "a correction to a math-
ematical calculation and did not disclose any new evi-
dence, methodology[,] or calculation." True or not, the
district court did not abuse its discretion by rejecting
the new exhibit. It was disclosed long after the time
for disclosure of exhibits, and it was clearly an attempt
to evade the district court's proper discovery sanction
limiting the damages e360 could seek.[5]

---

[5] Because the district court did not abuse its discretion by
                                                        (continued...)

D. *Linhardt's Trial Testimony*

e360 next complains of the district court's treatment of Linhardt's damages testimony. At trial, Linhardt testified that he had estimated e360's damages by calculating the average amount of revenue it would have received for each email sent and multiplying that by the number of emails he believed were blocked by ISPs using the Spamhaus list of known spammers. Linhardt was e360's primary witness and the only witness to testify to damages.

After trial, the district court excluded the vast majority of Linhardt's testimony on the grounds that he had attempted to provide expert testimony on matters "beyond the scope of his . . . business knowledge." *e360 Insight*, 2010 WL 2403054 at *3. (We discuss the one significant exception below in Part E.) The district court noted that Linhardt was not qualified by knowledge, skill, experience, training, or education to testify as an expert regarding the valuation of his business or his business's lost profits.

Even if Linhardt had been qualified to offer testimony on these matters, the district court explained, his testimony was inherently unreliable. This fact, the court said, "is unmistakably demonstrated by the profound differences in claimed damages proffered at various points

---

[5] (...continued)
excluding Exhibit 5(a) based on the timing of its disclosure and the effort to avoid the sanctions order, we do not address the application of Rule 702 to the exhibit.

during these proceedings." *Id.* "At the time of the default judgment, the damages claimed were $11,715,000. During discovery, Exhibit 5 was proffered reflecting damages of $135,173,577. At trial, proffered Exhibit 5(a) showed damages of $122,271,346. During final argument, the claimed amount was $30,000,000." *Id.* at *4. Even if those wild swings were set aside, the district court said, "it strains credulity that a company that made only a fraction of the profits Linhardt asks for over the course of its five-year lifespan would have garnered profits in the amounts Linhardt set out in his testimony or documentary evidence." *Id.* at *3. Because of these "systemic problems," the district court concluded that Linhardt's damages testimony was not reliable. *Id.* at *4.[6]

On appeal, e360 contends that the district court erred because it required Linhardt's testimony to meet the expert witness standards of Federal Rule of Evidence 702, which allows only qualified experts to testify regarding "scientific, technical, or other specialized knowledge." e360's argument misses the point. The district court gave Linhardt's testimony no weight because he was not credible.

We see no basis for doubting the district court's credibility finding. See, *e.g.*, *Anderson v. City of Bessemer City*,

---

[6] The district court also noted a number of "individual deficiencies" in Linhardt's testimony, *e360 Insight*, 2010 WL 2403054 at *4-*7, but we need not address the parties' arguments regarding those deficiencies. We find an ample independent basis to uphold the court's assessment of Linhardt's credibility.

470 U.S. 564, 575 (1985) (noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"). We need not determine whether Linhardt should have been treated as an expert or a lay opinion witness.

E.  *The $27,000 Damage Award — Profits v. Revenue*

As we have explained, the vast majority of e360's evidence was (1) stricken in its entirety as a discovery sanction; (2) excluded because it was disclosed long after the close of discovery; or (3) rejected on credibility grounds. The district court's treatment of this evidence was entirely proper. All that remains is the lone category of evidence on which the district court rested its damage award of $27,000.

The district court concluded that Linhardt had "provide[d] some reliable information" regarding e360's contracts with three customers. *e360 Insight*, 2010 WL 2403054 at *7. During the time that those companies dealt with e360, they collectively paid e360 approximately $27,000 per month for the services it performed. *Id.* As a result of Spamhaus's actions, the district court found, e360 lost its contracts with these customers.

The district court did not believe, however, Linhardt's claim that these contracts would have remained in effect for an additional four years if not for Spamhaus's conduct. Linhardt had admitted that "long-term agreements with customers were not the norm in the industry," the court explained, and had given no reason to believe

that these contracts were an exception to that general rule. *Id.* at *8. Despite its refusal to award four years of damages on these three contracts, the court believed that e360's relationships with these customers "were not in danger of ending prior to Spamhaus's actions," making it "more likely than not that they would have continued to do business with e360 for one additional month beyond the end of the relationships precipitated by Spamhaus." *Id.* For this reason, the district court awarded $27,000 on the claim that Spamhaus interfered with e360's existing contracts, "the amount of the payments [it] would have received for one additional month's worth of work for each of these customers." *Id.*

On appeal, Spamhaus argues that the district court's damage award was excessive because it was in the amount of e360's gross revenue rather than its profit. As Spamhaus correctly observes, gross revenue is generally not an appropriate measure of damages because revenue is calculated without regard to the costs the plaintiff incurred in the course of making that revenue. See *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983) ("a loss of revenue is not the same thing as a loss of profits. If you sell less of your product you will have lower costs, and the cost savings is a gain that must be offset against the loss of revenues in computing lost profit.").[7]

---

[7] This rule does not apply to costs that would have been incurred regardless of whether or not the plaintiff engaged

(continued...)

Our jurisdiction in this matter is based on diversity of citizenship between e360 and Spamhaus, and Illinois law controls the proper measure of damages. See *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1276 (7th Cir. 1993); *Muller v. Groban*, 346 F.2d 263, 265 (7th Cir. 1965); *Weakley v. Fischbach & Moore, Inc.*, 515 F.2d 1260, 1267 (5th Cir. 1975). On this question of state law, our review of those legal standards is de novo, though we review the district court's application of the legal standard to the facts only for clear error. *Shirley v. Russell*, 69 F.3d 839, 841-42 (7th Cir. 1995).

e360 defends the use of gross revenue on the theory that its revenue was all profit "because the e-mail messages had already been sent to the intended recipients." Although the "infrastructure costs" of transmitting an email were already incurred by the time of its transmission, regardless of whether the email was ever received, Lindhardt admitted that e360 still had to pay additional royalty fees whenever its emails generated revenue. These fees and e360's failure to account for them in its damages calculation doom the damages award. See *Taylor*, 712 F.2d at 1121 ("When a plaintiff contends that lost sales revenue would have been all profit, the contention is sufficiently improbable to

---

[7]  (...continued)

in the profit-making activity at issue. See *Taylor*, 712 F.2d at 1121 ("Costs that would be incurred anyway should not be subtracted, because by definition they cannot be avoided by curtailing the profit-making activity.").

require him to come forward with substantiating evidence. . . .”). Because e360 failed to offer any evidence that would have allowed the district court to determine what portion of its $27,000 lost gross revenue would have been profit, the district court's award in that amount was based on an error of law. Without evidence that might answer the critical question, "we cannot uphold the award of damages in this amount or even impose a remittitur." *Id.* We must instead vacate the modest damages award.[8]

III. *Conclusion*

By failing to comply with its basic discovery obligations, a party can snatch defeat from the jaws of certain victory. After our earlier remand, all e360 needed to do was provide a reasonable estimate of the harm it suffered from Spamhaus's conduct. Rather than do so, however, e360 engaged in a pattern of delay that ultimately cost it the testimony of all but one witness with any personal knowledge of its damages. That lone witness lost all credibility when he painted a wildly unrealistic picture of e360's losses. Having squandered

---

[8] e360 also argues that the uncertainty inherent in any prediction of a plaintiff's future lost profits should excuse its own and the district court's failure to identify what portion of e360's revenue was actually profit. While the law does not require precision in damages estimates, it requires a reasonable basis for estimating lost profits rather than lost revenue. See *Taylor*, 712 F.2d at 1121.

its opportunity to present its case, e360 must content itself with nominal damages on each of its claims, and nothing more. We VACATE the judgment of the district court and REMAND this matter with instructions to enter judgment for the plaintiffs in the amount of three dollars.