| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 20, 2018[*]
Decided December 20, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1115

| | |
| --- | --- |
| MICHAEL ALEXANDER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 15-cv-766-wmc |
| | |
| JAMES RICHTER and | William M. Conley, |
| MEREDITH MASHAK | *Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Michael Alexander, a Wisconsin inmate, asserts that he suffered headaches and vision problems while waiting three and a half months for an eyecare appointment. He brought this deliberate-indifference suit against two defendants—managers, respectively, of the prison's optical department and health services unit—whom he blames for a systemic problem at the prison of understaffing eye doctors. The district

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Rule 34(a)(2)(C).

court entered summary judgment on his claims. Because the record shows that the defendants were not responsible for determining the number of days an eye doctor would be available at the prison each month, we affirm the judgment.

We recite the undisputed facts in the light reasonably most favorable to Alexander, the non-moving party. *See Daniel v. Cook County*, 833 F.3d 728, 731 (7th Cir. 2016.) Alexander, an inmate at Columbia Correctional Institution, submitted a "Health Service Request" in early 2015 seeking an eye doctor appointment because he needed stronger reading glasses. A few days later, a nurse in the health services unit notified him that an appointment had been scheduled. He heard nothing more and submitted another request. In late February, he was informed by another nurse that he was on the list for an appointment but there was a five-month wait. Two weeks later he submitted another request, complaining that he experienced "very bad" headaches when he read, that his eyes did not focus as quickly as they used to, and that he sometimes saw "white spots." The next day he received the response, "Appt scheduled."

Hearing nothing for another month, Alexander in April submitted another request, stating that his headaches were getting worse, that his eyes watered when he tried to focus, and that he was still seeing spots. A nurse responded that his appointment was "soon."

Later that month, Alexander finally saw an optometrist from Richter Professional Services, a private company that provides optometry services to Columbia Correctional Institution and other facilities around the state. The optometrist noted Alexander's complaint that his migraines increased after reading, and prescribed new reading glasses. Alexander received the new glasses in May.

After receiving his glasses, Alexander filed a generalized grievance stating that he has been harmed by "unreasonable delays in medical care" that he attributed to "eye doctors working only twenty [hours] each month." He recounted the difficulties that he had experienced scheduling appointments and proposed that optometrists work 80 to 100 hours a month. In response, a complaint examiner noted that Alexander by this time had been seen by a specialist and received his glasses, so no action was needed in his case. As for the wait time, the examiner recommended that the issue be reviewed by

the Nursing Director. Based on the examiner's recommendation, Alexander's grievance eventually was dismissed.

Alexander then brought this deliberate indifference suit against Dr. James Richter, a corporate officer for Richter Professional Services and the manager of Columbia Correctional Institution's optical department (for which he hires optometrists and schedules prison visits), and Meredith Mashak, the manager of the prison's health services unit. *See* 42 U.S.C. § 1983. Alexander proceeded against Mashak based on her personal involvement in the decisions about his eyecare treatment. He also proceeded against both Mashak and Dr. Richter in their supervisory capacities, asserting that the prison's optical department suffers from a "systemic deficiency" that they both failed to address.

Discovery ensued, and the district court eventually granted the defendants' motion for summary judgment. At the outset, the court explained that the evidence did not support a finding that Alexander had experienced a serious medical need. His "*most serious complaints*," wrote the court, were headaches and problems focusing, which he did not describe as serious or debilitating until shortly before his exam, and he had never been diagnosed with a condition of suffering migraine headaches. But even if Alexander did suffer from a serious medical need, the court continued, he could not point to evidence showing that either Mashak or Dr. Richter responded with deliberate indifference. As for Mashak, the court determined that no evidence suggested that she knew about Alexander's requests for an eye appointment until early May—after he already had been seen by the optometrist. As for Alexander's claims against Mashak and Richter in their supervisory capacities, the court concluded that no evidence supported a finding that the prison's optical department was systemically deficient or that either defendant had the authority to schedule more frequent optical appointments at the prison.

On appeal, Alexander argues that he presented sufficient evidence of a serious medical need, specifically his repeated healthcare requests to prison medical staff complaining of headaches, difficulties reading, watery eyes, and spots in his vision. Alexander's argument is well-taken. A prisoner's medical need is "serious" if the failure to treat his condition causes the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This would extend to a medical condition that a

reasonable doctor would find worthy of comment or treatment, that significantly affects an individual's daily activities, or that causes chronic or substantial pain. *See Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008). A need for prescription glasses to avoid double vision and the loss of depth perception has been determined to be "serious" and inconsistent with "contemporary standards of decency." *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996).

But the subjective component of Alexander's Eighth Amendment claims requires him to present facts from which a jury could find that the relevant officials knew of his serious medical condition but intentionally or recklessly disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To this point, Alexander challenges the district court's ruling that that he failed to submit evidence that the defendants were responsible for a systemic failure to adequately staff the prison with optometrists. Alexander invokes the defendants' job titles and responsibilities as evidence that both Dr. Richter and Mashak had the authority to change the prison's policy of maintaining a waitlist and delaying eye exams. Alexander highlights Dr. Richter's role in scheduling optometrists to appear at the prison and Mashak's responsibility providing overall administrative support and direction to the unit. From this, he infers that Mashak could have demanded that Dr. Richter increase optometrists' availability at the prison

But Alexander has not identified a genuine fact question about the scope of Dr. Richter's or Mashak's responsibility because no evidence suggests that either defendant had the authority to increase optometrists' hours at the prison. Mashak's uncontradicted and sworn declaration stated, "I did not have control over the scheduling of eye doctors at CCI, including the number of days an eye doctor was at the institution each month. These determinations were made by the [Department of Corrections] Bureau of Health Services Medical Director." Similarly, Dr. Richter stated in his undisputed, sworn declaration, "I have no input on how many times per month an optometrist comes to CCI." Because Alexander presented no evidence to dispute either defendant's disclaimer of having policy-making control over the frequency of optometry services at the prison, the district court properly concluded that he could not establish deliberate indifference with regard to the systemic deficiency in the prison's optical department.

Alexander also challenges several procedural rulings made by the district court. First, he argues that the court, during the discovery stage, violated Federal Rule of Civil Procedure 45(a)(3) by refusing to order the clerk to issue blank subpoenas to him unless he specified whom he would subpoena, what information he sought, and how he would pay the required fees for any depositions. Rule 45(a)(3) does state that "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it." But any error in the handling of subpoenas was harmless because Alexander failed to show how he was prejudiced. *See* FED. R. CIV. P. 61 (harmless error); *see e360 Insight, Inc., v. Spamhaus Project*, 658 F.3d 637, 644–45 (7th Cir. 2011). Any evidence that he could have subpoenaed would not have salvaged his systemic-deficiency theory because he sued the wrong defendants—as Mashak explained, the only person who could increase optometrists' hours at the prison was the Department of Corrections Bureau of Health Services Medical Director.[1]

Alexander next appeals the denial of his motion for counsel—filed during discovery—to help him consult an expert and locate witnesses. Without the assistance of counsel, he contends, he was unable to gather needed evidence, including the testimony of an expert witness. But the court appropriately justified its ruling based on the quality of Alexander's submissions (they were easy to understand and included relevant legal citations) and his demonstrated ability to litigate the issues at stake in this case. *See Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007). The court also gave Alexander the option to move for counsel later if circumstances changed, but he made no further motion.

Alexander also argues that the court wrongly denied his motion to strike the expert witness disclosures submitted by both defendants, who did not specify their qualifications and opinions. Even if we assume this to be correct, Alexander again has not shown how he was prejudiced by the error. *See* FED. R. CIV. P. 37(c)(1) (stating that a failure to disclose information or witnesses does not bar use of that evidence or witness if the failure was "harmless"); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

---

[1] Alexander also contests the denial of his subsequent request for subpoenas—a request that did comply with the district court's directive for more specific information. But this challenge similarly fails because he cannot show how he was prejudiced by any error.

As the district court explained, the motion is irrelevant because the court did not rely on any expert testimony in evaluating the summary-judgment motions.

Finally, Alexander challenges the court's refusal to allow him to amend his complaint—three months after the defendants had moved for summary judgment—to add two additional deliberate indifference claims and five defendants who he says were liable for his injuries (Richter Professional Services; the manager of the prison's contract with Richter Professional Services; two of the prison's grievance examiners; and a Medical Program Assistant who scheduled Alexander's eye appointment). The court acted within its discretion in denying the motion as unduly prejudicial (in that the defendants had already devoted resources to responding to Alexander's other motions and preparing their own summary-judgment motions) and futile (in that the addition of these defendants would not change the outcome). *See Bethany Pharm. Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861–62 (7th Cir. 2001) (no abuse of discretion in denying leave to amend the complaint where the defendant has already moved for summary judgment and the same factual basis underlies plaintiff's additional claims).

AFFIRMED