SYKES, Circuit Judge.
Susan Kuttner was fired from her job as a DuPage County deputy sheriff after she wore her uniform and badge while trying *972 to collect on a loan for a friend. She sued the sheriff alleging that she was fired because of her sex. There’s no direct evidence of sex discrimination, so Kuttner’s lawyer embarked on a protracted fishing expedition in search of possible comparators to try to mount a case under the rubric of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Using an overbroad understanding of “similarly situated” employees, the lawyer sought the personnel files of more than 30 employees of the DuPage County Sheriffs Office. In response to these and other inappropriate discovery requests, the district judge stepped in and imposed some limits. In the end Kuttner failed to adduce evidence of sex discrimination, so the judge entered summary judgment for the sheriff.
On appeal Kuttner argues that the judge unduly restricted discovery and improperly granted summary judgment. We reject these arguments and affirm.
I. Background
Kuttner began working as a DuPage County deputy sheriff in 1998. In February 2010 she was fired by the Merit Commission, a unit of the sheriffs department that handles hiring, promotions, and disciplinary matters. The Commission was acting on an October 2009 complaint by Sheriff John Zaruba regarding an incident that occurred several months earlier when Kuttner, while in uniform, paid a visit to the home of a person who owed money to her boyfriend. More specifically, Kutt-ner’s boyfriend Steve Cooper had loaned a sum of money to one Reginald -Benjamin. Benjamin did not repay' the loan. One afternoon in April or May 2009, Kuttner— wearing her official sheriffs uniform and badge — visited Benjamin’s home in Hins-dale, Illinois, where he lived with his parents. Benjamin’s father came to the door and told Kuttner that his son was not home. Kuttner then left a business card listing her name and a company called “Team in Focus, DC International.”
Sheriff Zaruba alleged in his disciplinary complaint that Kuttner’s conduct — attempting to collect on a personal loan for a friend while in uniform — violated multiple departmental regulations. In what amounted to a plea deal, Kuttner stipulated to the facts we’ve just recounted and admitted to violating two rules: one prohibiting “conduct unbecoming” an officer and another prohibiting the improper wearing of the uniform. ‘ In exchange the other disciplinary charges were dropped. The Merit Commission determined that Kuttner’s conduct was serious enough to warrant discharge. She was fired on February 24, 2010.
Two weeks later Kuttner filed a complaint with the EEOC alleging that the sheriff had discriminated against her on the basis of her sex. After the agency declined action and gave her permission to sue, she brought this lawsuit against Sheriff Zaruba claiming sex. discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 et seq.[1] The complaint alleged that Kuttner was fired and denied a promotion because of her sex and that the sheriffs policies regarding jail staffing discriminated against female employees.[2]
*973 Discovery did not go smoothly. Lacking any direct' evidence of discrimination, Kuttner’s attorney cast a very wide discovery net in an effort to turn up male deputies who faced similar misconduct charges but suffered less drastic employment- consequences. Among other things, Kuttner’s lawyer sought the entire personnel files of more than 30 employees of the Sheriff’s Office — including, baselessly, documents relating to Sheriff Zaruba’s wife. The sheriff objected, and when the parties couldn’t resolve the dispute, they sought the court’s assistance. Prompted by the judge, Kuttner’s lawyer admitted that his request for documents about the sheriffs wife’s file was just “a fishing expedition.” Following a hearing, the judge concluded that Kuttner’s discovery requests were overly broad and unduly burdensome because they lacked any time limitation and were based oh “an overbroad definition of ‘similarity’ of misconduct.” The judge curtailed the scope of discoverable personnel documents to those arising after January 1, 2006, and pertaining to employees who were alleged to have engaged in “similar misconduct as [Kuttner] (abuse of authority) or sufficiently serious misconduct.” In addition to issuing these general limitations, the judge resolved some specific disputes about the disclosure of personnel files of particular employees.
Discovery proceeded for several months under these restrictions. More than three months later, however, Kuttner moved for reconsideration. The judge was not impressed with the belated motion, which came just a few weeks before the deadline to complete discovery (already twice extended). The judge reiterated his view that “[f]rom the start of discovery, Plaintiff (actually, her counsel) has made overly broad and unduly burdensome discovery requests, some of which were unwarranted fishing expeditions bordering on harassment.”' As the judge saw it, Kuttner’s counsel was again “over-reaching” and had shown “no solid factual basis for believing” that relevant evidence would be uncovered if the discovery restrictions were lifted. The judge declined to revisit his earlier order.
It was not long before -Kuttner’s lawyer again butted heads with the judge — this time during the next-to-last round of depositions. Deposing Deputy Tara Campbell, Kuttner’s counsel asked the witness whether she had ever heard or seen any deputy violate any Sheriffs Office policy or procedure. Predictably, this expansive inquiry drew an objection, and a call to the judge’s, chambers followed. The judge had twice sustained objections to similarly overbroad inquiries by Kuttner’s counsel earlier in this contentious discovery process. The judge did so again and restricted the inquiry to questions about the witness’s “personal knowledge of abuse of authority committed by other deputies (ie„ no more hearsay in the hope of leading to admissible evidence concerning abuse of authority).”
After discovery closed Sheriff Zaruba moved for summary judgment. Kuttner responded by proffering four male comparators that she claimed had also abused their positions but were not fired. The judge rejected all four because their misconduct was too dissimilar to make them suitable for comparison under the McDonnell Douglas indirect method of proof. Kuttner offered no other evidence that she was fired because of her sex, so the judge entered summary judgment for the sheriff on this claim. The judge also rejected *974 Kuttner’s failure-to-promote claim because she had never sought a promotion, nor had she alleged that a less qualified male- employee was promoted over her within the 300-day limitations period. Finally, the judge-concluded that material factual disputes necessitated a trial on Kuttner’s claim about the sheriffs jail-staffing policies.
A different judge presided at trial. Sheriff Zaruba prevailed.
II, Discussion
Kuttner apparently accepts the outcome of the trial; on appeal she does not seek to revive her jail-staffing claim. Rather, she challenges only the judge’s discovery limitations and his summary-judgment rulings rejecting her claims that she was fired and denied a promotion because of her sex.
A. Discovery Limitations
District judges have broad discretion over discovery matters, so we review discovery rulings deferentially, only for abuse of discretion. Spitz v. Proven Winners N. Am., LLC, 759 F.3d 724, 733 (7th Cir.2014). This standard requires us to affirm unless the judge’s ruling lacks a basis in law or fact or clearly appears to be arbitrary. e360 Insight, Inc. v. Spamhaus Project, 658 F.3d 637, 644 (7th Cir.2011). If we do find an abuse of discretion, “we ■will not grant any relief ‘absent a clear showing that the denial of discovery resulted in actual and substantial prejudice.’” Id. (quoting Searls v. Glasser, 64 F.3d 1061, 1068 (7th Cir.1995)).
Kuttner argues that the judge’s temporal limitation on discovery — the January 1, Í2006 outer boundary for personnel records — was arbitrary. Any temporal limit on discovery is in some sense artificial, and it’s true that the January 1, 2006 date isn’t keyed to any specific facts in the case. But our abuse-of-discretion standard of review requires a deferential and contextualized approach. To that end, the proper inquiry in this case is two-fold: (1) was some time limit warranted here, and (2) was this time limit reasonable, i.e., did it allow Kuttner a meaningful opportunity for discovery? The answer to both questions is “yes.”
To the first question, the judge’s reason for imposing the time limit was to rein in Kuttner’s “overly broad and unduly burdensome” discovery expedition, perhaps exemplified most starkly by the request for the personnel records of Sheriff Zaru-ba’s wife, who could not possibly have served as a legitimate comparator and was presumably targeted solely for harassment and humiliation. The judge, reasonably concluded that this litigation conduct by Kuttner’s counsel justified placing some limits on discovery so that it would focus only on capturing information reasonably calculated to lead to relevant evidence.
Recency is one component of rele-vanee. Valid comparators, for a plaintiff proceeding under the McDonnell Douglas indirect method of proof are “employees [who] dealt with the-same supervisor, were, subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer’s treatment of them.” Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir.2000). Here, restricting the time period wasn’t just about preempting a fishing expedition; it also served to hone in on possible comparators who were reasonably likely to have been subject to the same rules, supervisors, and decision-making process as Kuttner. Cf. Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 322 (7th Cir.2003) (affirming the district court's restriction of discovery in an ADEA case to only those *975 employees who, inter alia, “obtained [their] desired positions around the same time” as the particular round of workforce reduction affecting the plaintiff).
We’re confident as well that the authorized window was adequate for Kuttner to engage in meaningful discovery.- Kuttner doesn’t attack the judge’s original order limiting discovery; rather, she takes aim at the denial of her reconsideration motion. Recall that more than three months elapsed between the original order and Kuttner’s reconsideration motion. While this delay is not dispositive, there’s no question that it threatened to impose a massive new burden on the defendants with only a few weeks remaining until the discovery cutoff. Indeed, the judge relied on the delay as one reason for declining to reopen the matter. That was clearly a valid consideration.
The judge also-noted that the discovery deadline had already been extended several times, yet Kuttner had “fail[ed] to advance the actually-authorized discovery so far.” Kuttner can’t complain that she was hamstrung by the temporal limitation when she didn’t make an. adequate or appropriate effort to exhaust the avenues that were left open to her under the court’s earlier orders.[3]
Finally, Kuttner points to the fact that the judge who presided at trial “allowed testimony and évidence on all matters, including those between 1998 and 2006.” But the issue at trial was whether the sheriffs policies governing jail staffing were discriminatory. That claim rested on an entirely different evidentiary basis than Kuttner’s claim that she was fired because of her sex. The scope of the evidence at trial is irrelevant here.
Kuttner also complains about the court’s directive prohibiting “any hearsay questions during depositions.” But this mis-characterizes the judge’s ruling. During Deputy Campbéll’s deposition, Kuttner’s counsel asked the witness whether she had ever heard or seen any deputy violate any departmental policy or rule. That question was obviously overbroad; the judge had previously ruled similar questions out of bounds (twice!) and did so again when he was called during Deputy Campbell’s deposition. To" curtail further abuses, the judge directed Kuttner’s Counsel to stick to questions about the "witness’s “personal' knowledge of abuse of authority committed by other deputies (i.e., no more hearsay in the hope of leading to admissible evidence concerning abuse of authority).” Understood in proper context, this wasn’t a ban on “ány hearsay .questions,” as Kuttner now contends.
In short, the judge’s discovery limitations were entirely reasonable responses to the litigation conduct of Kuttner’s counsel. We find no abuse of discretion.
B. Summary Judgment
We review the judge’s summary-judgment ruling de novo, giving Kuttner the benefit of all reasonable inferences. Huang v. Cont'l Cas. Co., 754 F.3d 447, 450 (7th Cir.2014). Kuttner never specifically articulated which evidentiary- path she was pursuing to support her claims *976 that she was fired and denied a promotion on account of her sex. It’s clear, however, that she has no direct proof of discrimination. See Collins v. Am. Red Cross, 715 F.3d 994, 999 (7th Cir.2013) (The “direct” method of proof requires that the plaintiff “provide either direct or circumstantial evidence that the employer had a discriminatory motivation.”). The default method of proving discrimination is the burden-shifting approach of McDonnell Douglas, which requires the plaintiff to first make a prima facie showing that “(1) she is a member of a protected class; (2) she met her employer’s legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment.” Keeton v. Morningstar, Inc., 667 F.3d 877, 884 (7th Cir.2012).
The district judge concluded that Kuttner failed to satisfy the prima facie requirements because she did not identify any similarly situated male employee who received more favorable treatment. That conclusion was sound. Kuttner proposed four comparators — Richard Morgan, Philip Lynch, Joseph Zbilski, and Edmund Moore — but their misconduct wasn’t similar enough to Kuttner’s to make them suitable for comparison under the indirect method of proof.
Deputy Morgan received a written reprimand for making two personal visits to a female inmate in the jail while in uniform. Sergeant Lynch and Deputy Zbilski both distributed expired commissary food to an indigent female inmate; Lynch was instructed by a supervisor to discontinue the practice, but no discipline followed for either officer. Sergeant Moore, held night employment as a bouncer at a bar; he was issued a written reprimand and instructed to quit his second job.
On appeal Kuttner points to additional alleged misconduct by Morgan, Zbilski, and Moore. She says that Deputy Morgan allowed his girlfriend to dress up in his uniform for Halloween; for this he was referred to the Merit Commission, but he was not fired. Kuttner also claims that Deputy Zbilski hired an ineligible inmate to operate the commissary, but no charges were ever brought for this misconduct. Finally, she says that Deputy Moore had a romantic relationship with a domestic-violence victim but was not referred to the Merit Commission or otherwise reprimanded.
Kuttner’s prima facie case requires a showing of sufficiently analogous misconduct by male officers to support an inference that she was treated more harshly because of her sex. As the district judge correctly noted, the gravamen of the misconduct for which Kuttner was fired was “us[ing her] uniform to convey the impression that [she] was acting on the authority of the Sheriffs Office, but was not.” It’s not just that Kuttner wore her uniform while off duty or even for unofficial purposes; the material point is how the uniform was being used — for the improper projection of coercive police authority in service of a personal end. That’s what differentiates Kuttner’s misconduct from, for example, Deputy Morgan’s allowing his girlfriend to wear his uniform to a Halloween party or making two personal visits to a female inmate in the jail. In Deputy Morgan’s case, there were no allegations of coercion by the use or appearance of legal authority.
The remaining instances of misconduct by the male comparators are not remotely analogous to Kuttner’s coercive misuse of her uniform. Probably the .closest call is Sergeant Moore’s night employment providing security at a bar. But he was not accused of wearing his uniform at this *977 second job, so there was no improper coercion.
Summary judgment is appropriate when the distinctions between the plaintiff and the proposed comparators “are so significant that they render the comparison effectively useless.” See Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir.2007). That is the ease here. The judge correctly granted summary judgment for the sheriff on Kuttner’s claim that she was fired because of her sex.
Finally, Kuttner argues that her failure-to-promote claim should have survived the summary-judgment motion. We don’t see how; she never applied for a promotion, nor did she allege that a less qualified male officer was promoted over her during the 300-day limitations period preceding her complaint. Rather than contesting this line of reasoning directly, Kuttner shifts gears and argues that she “may establish a prima facie case using statistical evidence instead of comparative evidence pertaining to each class member.” There are two glaring problems with this argument: This isn’t a class action, and Kuttner hasn’t adduced a shred of statistical evidence to support the claim.
Affirmed.

, Kuttner also named the “DuPage County Sheriff's Offices” and DuPage County as defendants, The former has no legal existence, and the County is in the suit only by virtue of its duty to pay any judgment against Sheriff Zaruba in his official capacity. We’ll refer to Sheriff Zaruba as the sole defendant.

. Kuttner also alleged that Sheriff Zaruba retaliated against her for complaining about the jail-staffing policies and breached her employ *973 ment contract by failing to give her sick-leave and adoption benefits* after she was fired. The district court dismissed these claims as baseless, and Kuttner does' not challenge those rulings.'

. Our dissenting colleague faults us for relying in part on the burdens created by Kutt-ner's tardy reconsideration motion. See Dissent at p. 979. As we’ve noted, however, Kuttner’s attorney waited three months before asking the judge to reconsider the discovery limitations, and he filed his reconsideration motion only a few weeks before the discovery deadline, which had already been extended several times. It was not unreasonable for the judge to take the delay into account and also to consider the burdens that would necessarily flow from opening eight additional years of personnel records to discovery so late in the litigation.