**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 3, 2018[*]
Decided May 7, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2830

| | |
|---|---|
| CALVIN BROWN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| *v.* | No. 15-cv-1191-pp |
| BEVERLY FELTEN and | Pamela Pepper, |
| DONALD STONEFELD, | *Judge.* |
| *Defendants-Appellees*. | |

**O R D E R**

Calvin Brown, a Wisconsin state prisoner, has sued a nurse and doctor at Milwaukee County House of Correction. Brown contends under 42 U.S.C. § 1983 that they violated the Eighth Amendment by prescribing to him two drugs despite their potential side effects. The district court entered summary judgment for the defendants. Because Brown did not exhaust his claim against the doctor, and he submitted no evidence that the risks of any undisclosed side effects were substantial, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

We recount the facts in the light most favorable to Brown, the nonmovant. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Brown met in 2009 with Beverly Felten, a registered nurse with a Ph.D. in nursing and a specialty in gerontology. Since 2007 she has worked with psychiatrists and psychologists at the prison to assess the mental health of prisoners. Felten asked Brown if he had violent thoughts, and he said that when people would "get in his face" or threaten him he wanted to grab their necks or poke their eyes, but he would walk away. He also told Felten that he had tried to commit suicide. Based on this, Felten concluded that Brown had "active thoughts of hurting others with viable plans" of doing so, and placed him in psychiatric custody. Felten, who is also certified as an "advance practice nurse," *see* Wis. Admin. Code N §§ 8.01-8.06, can prescribe drugs. She prescribed two drugs to Brown: Risperidone, an antipsychotic drug that treats schizophrenia and bipolar disorder, and Sertraline, an antidepressant.

The next day, Donald Stonefeld, a physician specializing in psychiatry, examined Brown. He determined that Brown was calm and rational and should be released back to the general prison population. Regarding Felten's decision to place Brown in psychiatric custody, he wrote that "[Felten] over reacted [sic] to [Brown's] comments and with no psych background [she] was not equipped" to decide whether Brown was an "impending danger" or merely "wanted to discuss and understand" his thoughts. Stonefeld left in place Brown's prescriptions for Risperidone or Sertaline. Both Felten and Stonefeld's written reports state that they discussed the potential side effects of these two drugs with Brown. Brown denies that these conversations occurred.

Brown soon began experiencing unpleasant symptoms from the drug treatment. He suffered muscle spasms in his back, chest, arms, and legs; tremors in his face, chest, and legs; and hallucinations, severe headaches, insomnia, rapid heartbeat, anxiety, and constipation. Stonefeld took Brown off Risperidone after Brown told Stonefeld about these side effects. Brown asserts that these symptoms nonetheless continue to this day. Six years later he was diagnosed with "probable" tardive dyskinesia. This is a disorder of involuntary movements of the facial muscles and tongue that can develop from taking antipsychotic medications. *See* Lippincott, Williams & Wilkins, *Stedman's Medical Dictionary* 598 (28th ed. 2006). His doctor's notes from August 2016 record that Brown displayed "involuntary movement around the right side of his lower face" and that "newer atypical antipsychotics, such as Risperidone[,] are sporadically linked to tardive dyskinesia."

Brown decided to take legal action. He filed a grievance complaining that Felten harmed him by giving him Risperidone without proper training or experience. When his grievance went unanswered, Brown filed this lawsuit against both Felten and Stonefeld. During discovery, the court ordered the parties to "serve all requests for discovery by a date sufficiently early so that discovery is completed no later than July 18, 2016." Because Brown served discovery requests on Felten and Stonefeld just three days before discovery closed, they asked the court to protect them from having to answer the requests. Brown asked for more time to respond to the defendants' motion, but the court granted the motion before it received Brown's request for more time. The judge explained that Brown needed to serve all discovery requests by June 17 so the defendants could respond before discovery closed. The court acknowledged that Brown was pro se, but underscored that he still must follow the court's rules and orders. When the court later received Brown's motion for more time, it denied that motion as moot.

The court eventually entered summary judgment for the defendants. It ruled that, because Brown did not name Stonefeld in his grievance, Brown did not exhaust his claim against him. As for Felten, the court determined that no evidence suggested that Felten lacked authority to prescribe the two antipsychotic drugs to Brown or that she recklessly ignored a substantial risk of side effects from them.

Brown raises three main issues on appeal. First, he argues that Stonefeld forfeited his exhaustion defense and, forfeiture aside, Brown was not required to name Stonefeld in the grievance form in order to exhaust claims against him. Both points are wrong. The grievance form instructs that a grievance "must state the names of the person(s) involved, when describing the nature of the problem." This includes Stonefeld. And Stonefeld argued in his brief in support of his motion for summary judgment and in his reply brief that Brown's grievance did not mention Stonefeld. Therefore Stonefeld preserved his exhaustion defense, and the district court rightly dismissed him under the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a).

Brown next challenges the district court's entry of summary judgment for Felten. He contends that Felten deliberately ignored his medical needs, *see Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994), because she prescribed two antipsychotic drugs without adequate training: her specialty is gerontology, not psychiatry, and, according to Brown, she lacked the background necessary to put him in psychiatric custody. But Felten holds a Ph.D. in nursing, she has trained for years with psychiatrists to detect mental-health problems in prisoners, and she is licensed as an advance practice nurse. This license authorizes her to write prescriptions within her area of training, *see* Wis.

Admin. Code N § 8.06, which includes psychiatry. Beyond this, Stonefeld, a physician who specializes in psychiatry, decided to leave Felten's prescriptions in place when he released Brown from psychiatric custody. The record thus compels the conclusion that by prescribing the drugs Felten did not recklessly disregard Brown's medical needs.

Brown responds that Felten was deliberately indifferent for another reason: she did not warn him about Risperidone's potential side effects. Deliberate indifference means that a defendant "knows of and disregards an *excessive* risk to inmate health or safety." *Farmer*, 511 U.S. at 837 (emphasis added). Brown tells us that he experienced side effects, but he has not supplied evidence that these effects were an excessive risk of the drug. He submitted printouts from medical websites that list Risperidone's side effects. But the printouts do not quantify any risks. Without that quantification, no rational factfinder could conclude that Felten ignored an "excessive" risk to Brown's health, even if she did not warn him about possible side effects.

Brown also argues that Felten recklessly failed to ask him about other drugs that he was taking, but this argument is also flawed. He observes that Risperidone's warning label cautions that taking Risperidone with any listed drug (including Zantac, which Brown was also taking) may be dangerous. But this label does not specify the risk of taking Risperidone and Zantac together, so again a factfinder could not conclude Felten ignored an excessive risk. Moreover, under § 1983 Brown must provide evidence that Felten caused an injury. *See Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002) (stating plaintiff must produce evidence that injury had "causal connection" with alleged violation). Brown does not assert that the risk of taking both drugs together materialized into an injury. On this record, then, a jury could not conclude that, by failing to ask about Brown's other drugs, Felten caused compensable harm.

That brings us to Brown's third and final issue. He argues that the district court wrongly protected the defendants from answering Brown's discovery requests. We review that decision for abuse of discretion. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). Brown believes that the protective order was unjustified because he missed only a single deadline, and that happened because he misunderstood the scheduling order. He thought that July 18 was the date by which he had to *serve* his discovery requests, not receive responses. Although the scheduling order does not support his reading, Brown's argument fails for another reason. He does not tell us that his discovery requests sought evidence of the risk level of Risperidone's potential side effects—the evidence that he needed to survive summary judgment. Without a "clear showing of

actual and substantial prejudice" from the district court's decision, we will not overturn it. *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011).

Accordingly, the judgment is AFFIRMED.