**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2021[*]
Decided March 26, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-1693

| | |
|---|---|
| JOSE MEDRANO,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 16-cv-1333-MMM |
| JAMES BOLAND, *et al.*,<br>    *Defendants-Appellees*. | Michael M. Mihm,<br>*Judge*. |

## O R D E R

Jose Medrano, an Illinois inmate, sued several officials at the Pontiac Correctional Center for allegedly placing him in administrative segregation under unduly harsh conditions and stealing his legal documents in retaliation for his filing of a lawsuit and grievances. The district court dismissed a portion of the complaint at screening and ultimately entered summary judgment for the defendants. On appeal, Medrano principally contests the court's decision not to recruit pro bono counsel to represent

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

him. Because the district court reasonably concluded that Medrano could proceed without counsel, and his other challenges lack merit, we affirm.

We recount the facts underlying Medrano's lawsuit in his favor and give him the benefit of reasonable inferences. *See Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). On July 22, 2015, two correctional officers, Dustin Bayler and James Boland, searched Medrano's cell at Lieutenant Kelly Davidson's direction because the prison's internal affairs unit had received a report that there was contraband inside (mineral spirits, an alcohol based industrial solvent). Medrano, who had been removed for the search, saw Bayler and Boland leave his cell holding a clear plastic bag containing paperwork from one of his pending lawsuits and "several grievances." Later, Medrano discovered that he was missing some legal papers, though he could not specifically identify them or say whether the loss affected his pursuit of any lawsuit or grievance.

Bayler attested that no contraband was found and no property was seized from the cell. After the search, Davidson ordered that Medrano be taken into nonpunitive administrative segregation pending further investigation. The prison never produced a report about its investigation, and although Medrano's release from segregation was ordered on August 22, 2015, he was not let out until September 1. Further, Medrano said he was unable to bathe in segregation because the showers did not have standing assistance bars to accommodate his disability; prison records, however, reflect that Medrano took four showers and refused two while in segregation, and though he had a special permit for a cane, his medical record did not require bathing accommodations.

Medrano filed a pro se complaint under 42 U.S.C. § 1983, alleging that his constitutional rights were violated during the search of his cell and his subsequent segregation. Two claims survived screening—that Bayler and Boland confiscated his legal papers in retaliation for his exercise of protected speech and that Davidson violated his due process rights by ordering his segregation in unduly harsh conditions and for the same retaliatory purpose. Medrano then moved for the court to recruit counsel for him. *See* 28 U.S.C. § 1915(e)(1). He asserted that he was unable to represent himself because of a prior traumatic brain injury, which caused post-concussive headaches, and carpal tunnel syndrome. The district court denied the motion. Although the court found that Medrano had made sufficient efforts to obtain counsel on his own, it determined that he was competent to litigate despite his health conditions: "Plaintiff has filed cogent pleadings with the Court; and his claim has survived a merit review. Moreover, the plaintiff's claim is not so novel or complex that he cannot litigate it himself." Text Order (Jan. 18, 2017).

Throughout the litigation, Medrano peppered the court with renewed motions to recruit counsel and to reconsider its decisions, but the court denied each for largely the same reasons. In response to Medrano's first motion to reconsider, in which he emphasized that he had received help from other inmates to prepare his filings for this case, the court noted that Medrano's pleadings described that he had been able to pursue multiple prior grievances and a lawsuit. Medrano replied in a renewed motion that federal courts had recruited counsel for him in the past and that he was aided by "jailhouse lawyers" in all his other legal actions. The court then identified six federal lawsuits in which Medrano had represented himself and, in some, had success. Further, the court noted, he had also successfully obtained leave to amend his complaint in this case. So it concluded that Medrano was "a seasoned litigator" and that it "strain[ed] credulity to believe that [he] is incapable of litigating a claim and has done so only with the help of others." Text Order (Oct. 18, 2017).

Meanwhile, Medrano prosecuted his claims. The defendants objected to Medrano's discovery requests for Bayler and Boland's personnel files and every grievance filed against them, instead responding that neither officer had ever been disciplined for violating a prisoner's civil rights. Medrano moved to compel production, but the court ruled that the requested information was "irrelevant, unduly burdensome, or impacting safety and security concerns." Text Order (Jan. 12, 2018). The court also denied Medrano's request for unspecified limitations on his deposition.

Ultimately, the defendants moved for summary judgment and succeeded. The district court concluded that Medrano lacked evidence that any defendant was aware of his prior grievances or lawsuits, let alone motivated by his protected speech to retaliate against him. Further, having never identified which legal documents he was missing, he failed to show any injury caused by Bayler and Boland's actions. And his segregation was not unduly harsh or likely to chill future First Amendment activity because the defendants produced evidence that Medrano took showers, and Medrano had not substantiated a need for special accommodations for showering.

A few weeks after the judgment, Medrano unsuccessfully moved for reconsideration. He argued that the court erred by entering summary judgment before ruling on the last of his many requests for recruited counsel, which he also deemed a motion for default based on the purportedly late filing of the summary judgment motion. He further argued that he did not have an opportunity to respond to the defendants' reply brief, which he said he had not received. The district court explained

that Medrano was not permitted a sur-reply and had not identified any new evidence or a manifest error of law or fact, as required by Federal Rule of Civil Procedure 59(e).

On appeal, Medrano primarily contests the district court's repeated refusals to recruit counsel for him. Prisoners do not have a right to counsel in federal civil litigation, and volunteer lawyers are often in scarce supply, as compared to the demands of prisoners. *See McCaa v. Hamilton*, 959 F.3d 842, 844–45 (7th Cir. 2018). When determining whether to recruit counsel, district courts must therefore answer two questions: has the plaintiff made a reasonable attempt to obtain counsel and, if so, given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). All agree Medrano made a reasonable attempt to obtain counsel. Thus, we review the district court's answer to the second question under the deferential abuse of discretion standard, asking "not whether we would have recruited a voluntary lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

Medrano first argues that his traumatic brain injury should have precluded the district court from finding him competent to represent himself. But there is no entitlement to recruited counsel for prisoners with a history of mental impairments, and Medrano does not give us any particulars that show it was needed here. *See Perry v. Sims*, No. 19-1497, 2021 WL 800388, at *5 (7th Cir. Mar. 3, 2021). Second, Medrano reasserts that he was able to engage in past litigation only because of assistance from other prisoners. We do require district courts to consider an inmate's own competence, not what he can do with assistance from other prisoners. *McCaa*, 893 F.3d at 1033. But the district court here did so, concluding that it was unlikely that Medrano was able to pursue many federal lawsuits, with some success, over the course of two decades and from different prisons only because of assistance from jailhouse lawyers. *See, e.g., Medrano v. Smith*, No. 05-1092 (7th Cir. vacated and remanded Jan. 6, 2006).

Overall, the district court adhered to the *Pruitt* framework and reasonably exercised its discretion in denying Medrano's many motions. In addition to the issues that Medrano raises, the court considered, at varying times, most of the factors we have said bear on a litigant's competence relative to the complexity of the case: the stage of the litigation, whether the case involves complex issues or evidence, the litigant's communication skills and literacy, his prior experience with litigating, and issues with his health or mental capacity. *See Pruitt*, 503 F.3d at 655–656.

We see no error in the district court's assessment of Medrano's case as falling on the less complex end of the spectrum. As the court noted, Medrano had personal knowledge of the relevant events. This is not to say that the case was easy; a key element was the defendants' mental states (their motives), which we have noted tends to be difficult for pro se litigants to prove. *See Perry*, 2021 WL 800388, at *5. This is not a categorical reason to recruit counsel, however. *See Olson v. Morgan*, 750 F.3d 708, 711–12 (7th Cir. 2014). The court reasonably concluded that Medrano's communication skills and substantial prior litigation experience made him competent to proceed. *See Perry*, 2021 WL 800388, at *5 (even when a prisoner must prove the defendants' mental state, courts should "focus on the actual experience of the particular pro se litigant").

Medrano also challenges the denial of his motion to alter the judgment, but he does not point to any controlling precedent that the district court disregarded. *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015). And his challenges to the district court's document-production rulings and the scope of his deposition do not raise any error that causes us to question how the district court exercised its broad discretion over discovery. *See Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016).

We have considered Medrano's other arguments, and none merits discussion.

AFFIRMED