ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Tantara Corporation | ) | ASBCA No. 62484 |
| | ) | |
| Under Contract No. N40085-16-D-9345 | ) | |

APPEARANCE FOR THE APPELLANT:      David L. Seidman, Esq.
                                                              Seidman & Associates, P.C.
                                                              Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Craig D. Jensen, Esq.
                                                                        Navy Chief Trial Attorney
                                                                        Nicole R. Best, Esq.
                                                                        Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MCNULTY

Before the Board is Tantara Corporation's (Tantara) Motion to Compel Full and Complete Discovery Requests. For the reasons discussed below, the motion is partially granted.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The appeal arises under Contract No. N40085-16-D-9345, Task Order N4008518F4985 (R4, tabs 1, 4). The appeal is from the contracting officer's denial of Tantara's claim in the amount of $941,338 (R4, tab 21).

2. Under date of June 1, 2021, Tantara served 18 interrogatories on the Navy. Many of the interrogatories include subparts. (App. mot., ex. 2) In its interrogatories Tantara defined the term "Conceptual Design" as:

> . . . refers to the conceptual design referred to by members of the Navy in various correspondence with Tantara and which can be found [in] the RFP, Tab 2, of the Navy's Rule 4 filing with the Board, Attachment 3, Figure 1 on bates number GOV000278 and bates number GOV000286 through GOV000299.

(*Id.* at 2)

3.  Also under date of June 1, 2021, Tantara served 12 requests for admissions on the Navy (app. mot., ex. 3).  Tantara defined the term "Conceptual Design" in its requests for admissions as it had in its interrogatories (*id.* at 2).

4.  The Navy objected to Tantara's definition of the term "Conceptual Design," asserting the definition was vague and ambiguous (app. mot., ex. 4 at 1-2).  The Navy objected to answering more than 25 interrogatories, asserting that with the subparts of the interrogatories taken into consideration that Tantara had served more than 70 interrogatories (*id.* at 2).  The Navy unilaterally decided to respond to only the first three subparts of interrogatories with subparts until the Navy had reached 25 total interrogatories (*id.*).

5.  The Navy also objected to Interrogatories Nos. 5-7 and 16 on the ground that the interrogatories were contention interrogatories, improperly served at an early stage of discovery (*id.* at 7-9, 16).  The Navy also objected to Interrogatories Nos. 5 and 6 on the ground that the interrogatory was not relevant (*id.* at 7-8).  Finally, the Navy objected to Interrogatories Nos. 5-7 and 16 on the ground that the information sought would reveal the mental impressions of its attorneys or the legal advice they provided to the contracting officer (*id.* at 7-9, 17).

6.  The Navy objected to Interrogatory No. 9 as being vague and ambiguous because Tantara sought the basis for why the Navy provided "selective information regarding the structural conditions of Building 178" (*id.* at 11).

7.  The Navy also objected to Interrogatory No. 11 as being vague and ambiguous because Tantara sought the identity of the individuals who provided "engineering services" for the Navy from January 2015 to the present with respect to the Project as well as a description of the "engineering services" used to create or verify the Conceptual Design, but identified five individuals (*id.* at 13).

DECISION

Tantara moves to compel the Navy to file amended responses to some of its Interrogatories and Requests for Admissions and to have certain of its requests deemed admitted.  The Navy opposed on two general bases:  (1) the Navy objected to Tantara's definition of the term "Conceptual Design" and (2) the Navy objected to the number of interrogatories, relying principally on Federal Rules of Civil Procedure (FED. R. CIV. P.) Rule 33(a) (gov't. opp'n at 3-4, 8-14).  The Navy also objected to many of the interrogatories on the grounds that they are contention interrogatories and that some are irrelevant (*id.* at 16-19).  The Navy also argues Tantara failed to meet and confer as required by Board Rule 8(a) before filing the motion (*id.* at 6-7).

The Board has the power to control the discovery process and permits parties to file motions to compel when the opposing party does not properly respond to discovery requests. *Turbomach*, ASBCA No. 30799, 87-2 BCA ¶ 19,756 at 99,953-54; *J. R. Filanc Constr. Co.*, ASBCA No. 62580, 21-1 BCA ¶ 37,933 at 184,230; *see also Precision Dynamics, Inc.*, ASBCA No. 41360 *et al.*, 94-1 BCA ¶ 26,432 at 131,489 (denying government's motion to compel); *RMS Tech., Inc.*, ASBCA No. 50954, 98-2 BCA ¶ 29,944 at 148,163 (ordering contractor to respond to interrogatories after converting government's reply to motion to dismiss for failure to prosecute to a motion to compel); *AEC Corp.*, ASBCA No. 42920, 94-1 BCA ¶ 26,351 at 131,051 (treating government's motion for summary judgment as a motion to compel); *Christopher D. Constantinidis Constr. Co.*, ASBCA Nos. 34393, 34394, 90-1 BCA ¶ 22,267 at 111,863 n.1 ("If discovery is not properly responded to, a party should file a Motion to Compel with the Board.").[1] Resolution of the dispute occurs within the vast discretion enjoyed by Board in this regard. *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) *cert. den.* 539 U.S. 910 (2003); *see also Kinon Surface Design v. Hyatt Int'l Corp. et al.*, 2022 WL 787956 (N.D. Ill. March 15, 2022) (citing *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013)).

*The Number of Interrogatories Issue*

The Navy's reliance on FED. R. CIV. P. 33(a) in this instance is misplaced. The Board often looks to the federal rules for guidance when its own rules or procedures do not address an issue, but we are not bound by them. *See Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31,971 at 157,920 ("Although the Federal Rules of Civil Procedure do not apply to the Board as an administrative tribunal, we can look to them for guidance, particularly in areas our rules do not specifically address."); *Dennis Anderson Constr. Corp.*, ASBCA Nos. 48780, 49261, 96-1 BCA ¶ 28,076 at 140,188 (stating that the ASBCA looks to the Federal Rules for guidance); *see Gen. Dynamics Ordnance & Tactical Sys., Inc.*, ASBCA Nos. 56870, 56957, 10-2 BCA ¶ 34,525 at 170,260 (applying FED. R. CIV. P. 26(b)(1) for obtaining discovery of nonprivileged material relevant to a party's claim or defense); *see also Unconventional Concepts, Inc.*, ASBCA No. 56065 *et al.*, 10-1 BCA ¶ 34,340 at 169,591 (applying FED. R. CIV. P. 56(c) for summary judgment); *ZIOS Corp.*, ASBCA No. 56626, 10-2 BCA ¶ 34,474 at 170,040 (applying FED. R. CIV. P. 60); General Ship & Engine Works, Inc., ASBCA No. 19243, 79-1 BCA ¶ 13,657 at 67,020 FED. R. CIV. P. 60(b) considered with respect to motion to vacate a prior decision).

---

[1] Also see Board Rule 8(c)(3), which provides: "the Board may upon motion order: . . (3) A request for the production, inspection, and copying of any documents, electronic or otherwise, or objects, not privileged, which reasonably may lead to the discovery of admissible evidence. . . ."

However, appeals before the Board frequently involve far more interrogatories than the 25 permitted by FED. R. CIV. P. 33(a). In the *J.R. Filanc* appeal above, 40 were permitted after a government motion for a protective order.[2] However even greater numbers are routinely involved. *See The Boeing Co.*, ASBCA No. 54853, 11-2 BCA ¶ 34,813 at 171,321 (reference to Interrogatory No. 112(a)); *Am. Renovation and Constr. Co.*, ASBCA Nos. 53723, 54038 09-2 BCA ¶ 34,199 at 169,046 (reference to Interrogatory No. 101); *Real Estate Tech.l Advisors, Inc.*, ASBCA Nos. 53427, 53501, 03-1 BCA ¶ 32,074 at 158,506 (reference to Interrogatory No. 135); *Grumman Aerospace Corporation*, ASBCA No. 46834 *et al.*, 00-2 BCA ¶ 30,995 at 153,040 (reference to Interrogatory No. 159); *Space Age Eng'g, Inc.*, ASBCA No. 25761 *et al.*, 86-1 BCA ¶ 18,611 at 93,471 (reference to Interrogatory No. 55). These appeals demonstrate that Board cases frequently involve complex factual issues in which it is neither inappropriate nor overly burdensome to propound and receive responses to interrogatories and requests for admission far greater in number than that permitted under the FED. R. CIV. P. In this case the Navy has neither argued, nor proffered facts to support finding that the number of interrogatories and requests for admission propounded by Tantara is overly burdensome in the circumstances. Accordingly, the motion is granted to the extent it is based on the argument that FED. R. CIV. P. 33(a) limits the number of interrogatories and requests for admission that can be asked to 25. The Navy is directed to answer the interrogatories and requests for admission it has not answered previously based on its argument that the number served exceeds that permitted by the FED. R. CIV. P.

### *The Dispute Over How the Term "Conceptual Design" is Defined*

Tantara seeks to have the Board order the Navy to adopt its definition of Conceptual Design (app. mot. at 18). In this regard, the motion is denied. Although the motion is granted to the extent the Navy has failed to fully respond on the basis that it objects to appellant's definition of the term "Conceptual Design." In its General Objections section of its response to Tantara's interrogatories, the Navy asserts that Tantara's definition of the term is vague and ambiguous. Despite raising objections, the Navy, without waiving its objections, answered the interrogatories subject to its assertion that it was not required to respond to more than 25 interrogatories as discussed above.

The dispute between the parties giving rise to the appeal may, at least in part, be based on how this term is defined. Tantara may choose to define the term as it wishes and the Navy is not free to change the definition if it disagrees with the definition, nor is it required to accept Tantara's definition. The proper course of action is to state an

---

[2] Reduced from the 212 interrogatories originally served. The decision does not set forth the basis for the Board's order reducing the permitted number of interrogatories to 40.

objection and to answer the interrogatory as best it can as the Navy may have already done. It is not clear whether any additional response would be made to the interrogatories it answered despite raising an objection to Tantara's definition of the term "Conceptual Design," but to the extent that an additional response would be made, the Navy is directed to provide same to the interrogatories objected to on this basis.

The Navy also objected to a number of interrogatories as being vague and ambiguous, but went ahead and answered them as best it could based on its understanding of what Tantara was seeking. Unless discussed expressly below, the Navy has responded to the interrogatories satisfactorily that it objected to as being vague and ambiguous and need not respond further.

*Contention Interrogatories Issue*

Contention interrogatories are not *per se* objectionable prior to the conclusion of discovery as the Navy asserts in its responses to Interrogatories 5, 6 and 16 (app. mot., ex. 4 at 7-8, 10)[3]. *See J.R. Filanc Constr. Co.*, ASBCA No. 62580, 21-1 BCA ¶ 37,933 at 184,231. The principal basis that has been given for waiting for the completion of discovery for the responses to contention interrogatories is that the answers may be found within the documentary discovery that may not yet have occurred when the interrogatories are propounded. *See Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 334-39 (N.D. Cal. 1985). The Board in the present circumstances is of the view that the answers to the interrogatories the Navy has objected to on the basis they are contention interrogatories will aid in narrowing the issues and accordingly, should be answered sooner, rather than later. *See J. R. Filanc*, ASBCA No. 62580, 21-1 BCA ¶ 37,933 at 184,231 (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012). The Navy may have failed to respond fully to Interrogatories Nos. 5, 6 and 16 on the basis that they are contention interrogatories (app. mot., ex. 4 at 7-8, 16-17). However, although objected to, the Navy provided responses to these interrogatories. To the extent the Navy's response would have been broader, but for its objection, the Navy shall respond to Interrogatories Nos. 5, 6 and 16.

*Relevancy*

The Navy also objects to Interrogatory Nos. 5 and 6 on the grounds of relevancy (gov't. opp'n at 18-19). It is well established that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Relevant information need not be admissible at trial so long as the discovery appears to be reasonably calculated to lead to the

---

[3] The Navy objected to other interrogatories on the basis that they too were contention interrogatories, but Tantara has limited its motion to only Interrogatories Nos. 5, 6 and 16 on this basis (app. mot. at 13-15).

discovery of admissible evidence. *Id.* Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case. The Board has held that, "[i]t is well established that the concept of relevance in discovery proceedings is broader than that which governs admissibility of evidence at the trial." *Lockheed Martin Aeronautical Co.*, ASBCA No. 62209, 21-1 BCA ¶ 37,954 at 184,329 (citing *Ingalls Shipbuilding Div., Litton Sys., Inc.*, 73-2 BCA ¶ 10,205 at 48,096). All of Tantara's requests appear to be reasonably calculated to lead to the discovery of admissible evidence. As noted previously, the Navy, despite raising objections, responded to both Interrogatory Nos. 5 and 6, but to the extent the Navy's responses would be different had it not objected on the ground of relevancy the Navy is directed to supplement its responses.

*Failure to Meet and Confer Issue*

Board Rule 8(a) requires that the movant state that it has made a good faith attempt to resolve any discovery dispute without involvement by the Board. The Navy argues in its defense Tantara failed to comply with this rule (gov't. opp'n at 6-7). The Navy referred to an email message included as an exhibit to the motion, which was written in response to a letter from counsel for Tantara dated January 5, 2022, which sets forth most of the arguments laid out in the motion (app. mot., exs. 5-6).

The Navy asserts that it believed the dispute had largely been resolved during a telephone conversation in February 2022. The Navy is understood essentially to be arguing the motion is untimely. Although no reason has been proffered why Tantara elected to wait several months after this telephone conversation to file its motion, there is no requirement that it do so immediately upon existence of the dispute. The motion was filed while discovery is ongoing and there is no prejudice or delay alleged to have occurred as a result of this delay in filing the motion. While it is true Tantara failed to include the statement required by Rule 8(a), the documents relied upon by the Navy to argue Tantara's non-compliance with the rule indicate that Tantara did in fact seek to resolve the dispute without the Board's involvement. The failure to make the required statement in the motion is of little importance in the circumstances and is not a reason to deny the motion.

*Failure to Act in Good Faith Assertions*

Tantara makes several specific assertions that the Navy has failed to act in good faith in responding to its discovery requests. Tantara has failed to establish the Navy has not acted in good faith in responding to its discovery requests. As an example, Tantara seeks to compel the Navy to amend its response to Interrogatory No. 2, which states:

Identify each individual who participated in the preparation of the Conceptual Design and specifications that were included with the RFP. For each individual, describe exactly what he or she did in connection with the preparation of the Conceptual Design and specifications that were included with the RFP.

(App. mot., ex. 4 at 5)

The Navy responded:

| | |
|---|---|
| Jon Reaves | Had Responsibility for the preparation of the RFP. Wrote the specifications/requirements package included in the Solicitation, including Figure 1 entitled: "Sample Snow Guard Connection Design Concept" which appears at bates page GOV000278 of the Government Rule 4 file |
| Jeff Hoyt | Supervised individuals responsible for developing the RFP. Provided general direction in terms of Design Agent and Design Strategy for the Project. |
| Robert Pantel | Provided peer review to Program Manager during RFP development. |
| Ian Bodwell | Provided peer review of pre-solicitation engineering study for Program Manager |
| Tim O'Connel | Provided peer review of the RFP for purposes of lightning rod replacement. Provided technical review of design submittals relating to lightning rod installation. |

(*Id*). This response appears on its surface to have completely responded to Tantara's interrogatory. Tantara has included no information in its motion explaining why in its view this response is inadequate, much less not made in good faith.

This failure was made with respect to many of the other interrogatories and several of the requests for admission where Tantara also argues the Navy's responses were not made in good faith.

Another example relates to Request for Admission (RFA) No. 3 and Interrogatory No. 12 (app. mot. at 19-21). The requests made in RFA No. 3 and Interrogatory Nos. 12 and 18[4] and the responses thereto relate to a perceived delay in issuing a modification

---

[4] Interrogatory No. 18 is a catchall, applicable to all the RFA, and adds nothing further that is specific to the perceived delay at issue and its cause.

Tantara asserts it was promised.  The Navy's responses appear, without more, to be responsive to the discovery requests, other than no explanation was provided by the Navy for the reason why the Navy construction manager withdrew the request for a modification, which appears to be the root purpose behind RFA No. 3 and Interrogatory No. 12.  Discovery requests are to be reasonably interpreted using common sense and not viewed using strained, overly technical legal analyses.  *Praetorian Ins. Co. v. Axia Contracting, LLC*, 2022 WL 2274705 at *4 (D. Colo. June 23, 2022) (defendants obligated to reasonably construe requests) (citing *Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 518 (D. Colo. 1993)); *see also Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 11620828 at *10 (February 29, 2016) (citing *Bryant v. Armstrong*, 285 F.R.D. 596, 606 (S.D. Cal. 2012)).  The Navy has not fully responded to Interrogatory No. 12 because it failed to provide an explanation for its construction manager's decision to withdraw the request for the modification.  The Navy shall respond fully to Interrogatory No. 12 by amending its response to include the reasons why the construction manager decided to withdraw the request for the modification.

*Other Specific Interrogatories*

Interrogatory No. 9

This interrogatory seeks the factual basis for the reason why the Navy provided selective structural information (SOF ¶ 6).  The Navy's response stated that it had tried to reasonably interpret what Tantara was seeking using common sense, but had not been able to determine what Tantara wanted.  After review of the complete interrogatory and Navy response, I agree the interrogatory is too vague and ambiguous to determine with any specificity what information Tantara is trying to discover.  Reference to the AECm Memo and paragraph 37 of the Complaint in the interrogatory does not ameliorate the situation.  No further response from the Navy is required with respect to this interrogatory.

Interrogatory No. 11

In this interrogatory Tantara sought the identity of the individuals who provided "engineering services" for the Navy from January 2015 to the present with respect to the Project as well as a description of the "engineering services" used to create or verify the Conceptual Design (SOF ¶ 7).  Although the Navy objected to this interrogatory it did respond, identifying five individuals (*id.*).  However, the Navy failed to describe the scope of the services provided by the named individuals.  The Navy shall amend its response to describe what each of the individuals did with respect to creating or verifying the Conceptual Design as requested.

8

*Requests for Admissions*

Tantara seeks to have Requests for Admissions (RFA) Nos. 2-3, 5-7 and 10 deemed admitted due to the Navy's perceived lack of good faith (app. mot. at 1). Alternatively, Tantara sought to have the Navy ordered to respond "in a manner reflective of good faith participation in the discovery process" (*id.* at 1 n.1). Specifically, Tantara sought to compel the Navy to amend its responses to RFA Nos. 1, 4, 9 and 12 (*id.* at 1). In the circumstances, having failed to establish the Navy has not acted in good faith as discussed above, deeming the requests admitted is too drastic a remedy. Instead, the Navy shall respond to the requests it previously had not responded to.

*Specific Requests for Admission*

RFA Nos. 1, 4 and 12

As noted above Tantara seeks to compel the Navy to Amend its response to these RFA. However, its motion fails to address the reason why the Navy's responses are inadequate. The Board has often held that failure to address an issue in post-hearing briefing constitutes abandonment of the issue. *Sci. and Mgmt. Res., Inc.*, ASBCA No. 60412, 19-1 BCA ¶ 37,236 at 181,243 (citing *States Roofing Corp.*, ASBCA No. 54860, *et al.*, 10-1 BCA ¶ 34,356 at 169,664). There is no reason that should not apply to any issue raised and not briefed. Even had Tantara not abandoned these contentions it is noted that the Navy unequivocally and without objection admitted RFA No. 1 and denied RFA No. 4. The Navy objected to RFA No. 12 based on Tantara's definition of Conceptual Design, discussed above, and the use of the term "rail" on the grounds that it was ambiguous, which it explained in its answer. Subject to these qualifications it denied the RFA. No further response is required. The motion is denied with respect to RFA Nos. 1, 4 and 12.

RFA No. 9

The Navy denied this RFA without qualification. No further response is required.

*Protective Order Request*

In the alternative the Navy also sought a protective order to avoid having to respond to more than 25 interrogatories (gov't. opp'n at 14-15). For the reasons espoused above with respect to the Navy's arguments in opposition to the motion, the Navy's request for a protective order is denied

CONCLUSION

The motion is partially granted as explained above. The parties are to confer and propose a schedule for going forward no later than February 10, 2023. The schedule shall include three alternate proposed hearing dates.

Dated: January 27, 2023

CHRISTOPHER M. MCNULTY
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62484, Appeal of Tantara Corporation, rendered in conformance with the Board's Charter.

Dated: January 27, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals